IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GILMAR ALEXANDER GUEVARA, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-08-1604 |
| | § | |
| RICK THALER, | § | |
| Director, Texas Department of | § | |
| Criminal Justice, Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM AND ORDER**

Gilmar Alexander Guevara seeks federal habeas corpus relief from his Texas state-court capital conviction and death sentence. The respondent, Rick Thaler, has moved for summary judgment. This memorandum and order addresses only Guevara's claim that his mental retardation precludes his execution. *Atkins v. Virginia*, 536 U.S. 304 (2002). The respondent contends that this court cannot consider the merits of Guevara's *Atkins* claim because he defaulted it under state procedural law. For the reasons set out below, the court concludes that the present record is insufficient to decide the issue.

**I.    Background**

A jury convicted Guevara of capital murder and sentenced him to death in 2001. Guevara appealed. The Court of Criminal Appeals affirmed the conviction and sentence on January 15, 2003. *Guevara v. State*, 97 S.W.3d 579 (Tex. Crim. App. 2003). In Texas, capital habeas proceedings run concurrent to direct appeal. Several months before Guevara filed his initial state habeas application, the Supreme Court held that the Eighth Amendment prohibits the execution of a mentally retarded

offender. *See Atkins*, 536 U.S. at 307. When Guevara filed his habeas application in December 2002, he did not raise an *Atkins* claim. Three years after filing his initial application, but before the Texas Court of Criminal Appeals had ruled on that application, Guevara filed a "Subsequent Application for Art. 11.071 Writ of Habeas Corpus" in the state district court. Guevara raised three new claims: (1) mental retardation prevents his execution under *Atkins*; (2) only a jury can decide whether an inmate is mentally retarded; and (3) trial counsel provided ineffective assistance by not uncovering his mental retardation. All three claims rested on Guevara's ability to prove that he fell into the category of offenders protected by the *Atkins* decision.[1]

Texas capital inmates face stringent deadlines in seeking state habeas relief. Texas statutory law treats any pleading filed outside a strict statutory period as a new habeas action. *See* TEX. CODE CRIM. PRO. art. 11.071 § 5(f) ("If an amended or supplemental application is not filed within the time specified under Section 4(a) or (b), the court shall treat the application as a subsequent application under this section."). Guevara tried to raise his *Atkins* claim in state district court in

---

[1] The *Atkins* Court left to the States "'the task of developing appropriate ways to enforce the constitutional restriction upon [their] execution of sentences.'" *Atkins*, 536 U.S. at 317 (quoting *Ford v. Wainwright*, 477 U.S. 399, 416-17 (1986)). Federal and state cases agree that an inmate only becomes ineligible for execution after meeting three requirements: (1) substantial limitations in intellectual functioning; (2) significant limitations in adaptive skill areas; and (3) manifestation of those limitations before age 18. *See Atkins*, 536 U.S. at 309 n.3; *Ex parte Briseno*, 135 S.W.3d 1, 7 (Tex. Crim. App. 2004). Guevara's successive habeas application did not rely on conclusive evidence of mental retardation. Guevara based his *Atkins* claim on an affidavit from a psychologist, Dr. Antolin M. Llorente, who Guevara's attorneys retained "in an attempt to rule-out mental retardation." From that review, Dr. Llorente opined:

> With regard to the requested rule-out of mental retardation by the referral source, Mr. Guevara's impaired intellect, in conjunction with his history of adaptive delays, and the fact that his impairments had an early onset (before the age of 18 years), does not permit a rule-out of mental retardation. In fact, it is my opinion, with a reasonably degree of psychological certainty, that Mr. Guevara suffers from mental retardation[.]

(Docket Entry No. 1, Affidavit of Antolin M. Llorente dated July 21, 2005).

2

January 2006, well outside the period for amending his initial state habeas application. In his pleading, Guevara acknowledged that the abuse-of-the-writ provisions of TEX. CODE CRIM. PRO. art. 11.071 § 5 would require dismissal of the newly raised claims unless he met a statutory exception. Section 5(a) requires a Texas court to dismiss any subsequent application unless an inmate meets one of three exceptions:

> (1) the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article or Article 11.07 because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application;
>
> (2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt; or
>
> (3) by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the state's favor one or more of the special issues that were submitted to the jury in the applicant's trial[.]

TEX. CODE CRIM. PRO. art. 11.071 § 5(a).

Guevara provided three reasons why his *Atkins* claim complied with sections 5(a)(1) and 5(a)(3). First, Guevara argued that he "could not have . . . presented" his *Atkins* claim because, although the Supreme Court decided *Atkins* in 2002, the Court of Criminal Appeals did not establish the standards by which Texas would implement the *Atkins* decision until 2004, when it issued *Ex parte Briseno*, 135 S.W.3d 1 (Tex. Crim. App. 2004). Guevara argued that his subsequent application fell within the section 5(a)(1) exception because his *Atkins* claim became viable only after *Briseno*. Second, Guevara argued that equity should allow him to insert an *Atkins* claim into

his ongoing state habeas proceedings. Third, Guevara argued that mental retardation made him actually innocent of his death sentence, allowing review under section 5(a)(3).[2]

After finding that Guevara's subsequent habeas application was untimely, the state district court forwarded that application to the Court of Criminal Appeals. *See* TEX. CODE CRIM. PRO. art. 11.071 § 5(b) (requiring the district court to send a subsequent habeas application to the Texas Court of Criminal Appeals). In a brief order, the Court of Criminal Appeals dismissed the application:

> This Court has also reviewed the record with respect to the application which was forwarded to this Court as a subsequent writ. On January 13, 2006, the trial court entered an order finding that said application was filed after the time period specified under Texas Code of Criminal Procedure, Article 11.071 § 4(a) or 4(b). We agree with the trial court's determination. Further, we find that the application fails to meet one of the exceptions provided for in Section 5 of Article 11.071 and, thus, dismiss this subsequent application as an abuse of the writ. *See Ex parte Blue*, S.W.3d, AP-75,254 (Tex. Crim. App. March 7, 2007).

*Ex parte Guevara*, 2007 WL 1493152, * 1 (Tex. Crim. App. 2007).

Guevara's federal petition renews the claims he raised in his subsequent state application. The respondent contends that summary judgment is appropriate on those three issues because the State's reliance on adequate and independent state law forecloses federal review. But, the record does not adequately reveal whether the state court made a purely procedural ruling or reached the merits of Guevara's *Atkins* claim.

**II. Analysis**

The respondent argues that the operation of Texas state procedural law precludes federal consideration of Guevara's *Atkins* claim. Under the procedural bar doctrine, "a habeas petitioner

---

[2] The Court of Criminal Appeals interprets article 11.071 § 5(a)(3) as an actual-innocence exception to the abuse-of-the-writ doctrine.

4

who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). If "adequate and independent state law procedural grounds" prevented the state courts from addressing the claim, principles of comity and federalism foreclose federal review. *Dretke v. Haley*, 541 U.S. 386, 392-93 (2004); *see also Coleman*, 501 U.S. at 729 (stating that federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment").[3] This court must decide whether the state appellate court's reliance on Article 11.071, § 5, of the Texas Code of Criminal Procedure is an "independent and adequate" ground to support the judgment. *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001).

The Fifth Circuit has recognized that Article 11.071 § 5(a) generally serves as an independent and adequate ground to bar federal review. *See Barrientes v. Johnson*, 221 F.3d 741, 759 (5th Cir. 2000); *Fuller v. Johnson*, 158 F.3d 903, 906 (5th Cir. 1998); *Emery v. Johnson*, 139 F.3d 191, 195-96 (5th Cir. 1997); *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995). However, the unusual circumstances of *Atkins* claims have required the federal courts to reexamine section 5(a)'s application in some cases.

One issue is whether the state court "need[ed] to consider or decide the merits of [the inmate's] constitutional claims in reaching its decision to dismiss those claims as an abuse of the

---

[3] The "independent" and "adequate" inquiries examine separate components of the state procedural ruling. A state procedural rule is not independent when the relevant decision "'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'" *Coleman*, 501 U.S. at 735 (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983)). A procedural rule is not adequate unless it "is strictly or regularly followed by the cognizant state court" and "applied evenhandedly to the vast majority of similar claims." *Amos v. Scott*, 61 F.3d 333, 339 (5th Cir. 1995).

writ pursuant to Article 11.071, Section 5." *Hughes v. Quarterman*, 530 F.3d 336, 342 (5th Cir. 2008). If the state court decision "fairly appears to rest primarily on federal law, or to be interwoven with federal law," the state law ground is not independent and this federal court may address the merits of the claim. *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983); *see also Coleman*, 501 U.S. at 735; *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985).

This court must decide whether "the state court 'clearly and expressly' stated that the state procedural ground was a basis for its decision independent of the federal-law ground." *Foster v. Johnson*, 293 F.3d 766, 786 (5th Cir. 2002) (quoting *Coleman*, 501 U.S. at 735); *see also Bledsue v. Johnson*, 188 F.3d 250, 257 (5th Cir. 1999) ("[T]he mere existence of a procedural default does not deprive federal courts of jurisdiction. Quite to the contrary, to prohibit our collateral review the state court must have expressly relied on the procedural bar as the basis for disposing of the case.").

Guevara asserts that "there was not an independent and adequate state ground for [the state court] rejection [of his *Atkins* claim], thus this federal court can consider the issue." (Docket Entry No. 1 at 11). In *Rivera v. Quarterman*, 505 F.3d 349, 359 (5th Cir. 2007), the court held that section 5(a) is not always independent of federal law in *Atkins* cases. The inmate in *Rivera* filed a mental-retardation claim in a subsequent habeas application a year after the Supreme Court decided *Atkins*. The Court of Criminal Appeals dismissed the later application as an abuse of the writ. The Court of Criminal Appeals noted that the inmate had relied on new constitutional law, presumptively allowing for his subsequent state habeas action to proceed under section 5(a)(1). The court, however, held that more was required to authorize a subsequent *Atkins* claim:

> [U]nder our case law, there is a second prerequisite under Section 5 before the merits of a subsequent writ can be considered. A subsequent writ must contain "sufficient specific facts" to support an applicant's *Atkins* claim. A writ application which makes the naked

6

> assertion, "I am mentally retarded," or "there is a significant likelihood that [I] am mentally retarded," does not suffice to leap over this second hurdle. The mere assertion of a valid legal claim, unsupported by sufficient specific factual allegations which, if true, would entitle the applicant to relief, is not enough to overcome a Section 5 bar. On the other hand, an applicant is not required to set out within his writ application the detailed facts and record evidence which would prove his mental retardation by a preponderance of the evidence.

*Ex parte Rivera*, 2003 WL 21752841, at *1 (Tex. Crim. App. 2003). The Court of Criminal Appeals dismissed the case because the inmate had failed to produce "sufficient facts to raise a bona fide claim of mental retardation." *Id.* at *2. On federal habeas review, the Fifth Circuit held that by engaging in a review of the merits, the Court of Criminal Appeals had interwoven its procedural ruling with federal substantive law grounds. According to the Fifth Circuit, the "Texas courts have imported an antecedent showing of 'sufficient specific facts' to merit further review, rendering dismissal of such claims [as an abuse of the writ] a decision on the merits" *Rivera*, 505 F.3d at 359 (quoting *Morris v. Dretke*, 413 F.3d 484, 500 n.4 (5th Cir. 2005) (Higginbotham, J., concurring)) (footnotes omitted). In other words,

> to decide whether an *Atkins* claim is an abuse of the writ, the [Court of Criminal Appeals] examines the substance of the claim to see if it establishes a prima facie case of retardation[.] . . . Thus, a decision that an *Atkins* petition does not make a prima facie showing – and is, therefore, an abuse of the writ – is not an independent state law ground.

*Rivera*, 505 F.3d at 359; *see also Stewart v. Smith*, 536 U.S. 856, 860 (2002) (looking at whether a ruling is independent of federal law because it "depend[s] upon a federal constitutional ruling on the merits"); *but see Gardner v. Galetka*, 568 F.3d 862, 884 (10th Cir. 2009) (distinguishing between a state court's consideration of federal law in applying a state procedural rule and doing so

in applying an exception to that rule). Read broadly, the *Rivera* opinion could prevent section 5(a) from barring federal habeas review of any *Atkins* claim.

The respondent argues that "the Court of Criminal Appeals delivered a plain statement of its reliance on state procedural rules when it dismissed Guevara's successive application as an abuse of the writ." (Docket Entry No. 17 at 22). The respondent contends that Guevara's "*Atkins* application was not dismissed for failing to make a prima facie showing. Instead, . . . that decision contains a plain statement of the court's reliance on state law procedural grounds – a statement which makes clear that the dismissal is procedural in nature[.]" (Docket Entry No. 17 at 23). On that basis, the respondent maintains that "the decision is not reviewable on federal habeas." (Docket Entry No. 17 at 23).

The respondent is correct that the Court of Criminal Appeals did not mention a *prima facie* review of the merits when it dismissed Guevara's subsequent application. Nonetheless, the application of *Rivera* to this case is still unclear. The Court of Criminal Appeals decision in this case provides little information about what standard it employed when it dismissed Guevara's subsequent application. The parties have not discussed whether the Court of Criminal Appeals engaged in a *prima facie* review when applying section 5(a)(1) even if it did not explicitly refer to that standard. Moreover, the parties have not placed *Rivera* into the full context of Texas habeas jurisprudence. Read expansively, *Rivera* could stand for the proposition that section 5(a) cannot bar federal review of any *Atkins* claim raised in a subsequent application. The *Rivera* opinion did not take into account the fact that the Court of Criminal Appeals applies section 5(a)(1) differently when an inmate has filed his initial habeas application *after*, not before, the Supreme Court decided *Atkins*. In *Ex parte Blue*, 230 S.W.3d 151 (Tex. Crim. App. 2007), a case decided before the Fifth Circuit

issued *Rivera*, the Court of Criminal Appeals limited its *prima facie* inquiry to those cases in which an inmate could not have advanced an *Atkins* claim in his initial state habeas application because the case had not been decided:

> For those habeas applicants who filed their initial writs before *Atkins* was decided, [section 5(a)(1)] has not been an impediment, so long as they can establish a prima facie case for mental retardation. But for an applicant such as Blue, who filed his initial writ application after *Atkins* and nevertheless failed to invoke the absolute constitutional prohibition against executing the mentally retarded in that initial writ, the decision whether to permit him to proceed will be purely a function of whether he can meet one of the other criteria of Article 11.071, Section 5.

*Blue*, 230 S.W.3d at 156 (footnote omitted). In essence, the Court of Criminal in *Blue* held that the *prima facie* inquiry mentioned in *Rivera* does not apply to inmates who first filed for state habeas relief after *Atkins*.

It is undisputed that Guevara filed his initial habeas application well after the Supreme Court decided *Atkins* in 2002. Guevara then waited three years before raising his mental retardation. According to *Blue*, Guevara's subsequent state habeas application fell within the category of cases distinguishable from *Rivera*. The parties have not yet briefed whether *Blue* requires this court to distinguish *Rivera* on that point.

*Blue*, however, raises another concern about the Texas abuse-of-the-writ bar in this case. Guevara argues that his subsequent application not only fell within the section 5(a)(1) exception, but also within the section 5(a)(3) actual-innocence exception. In *Blue*, the court considered the argument that mental retardation amounts to actual innocence of the death penalty under section 5(a)(3). Similar to the decision in *Rivera*, the *Blue* court found that complying with the statutory

language of section 5(a)(3) would not suffice to allow a successive *Atkins* claim to proceed. The *Blue* court held:

> We reject any assertion that, because the Eighth Amendment erects an absolute bar to executing the mentally retarded, an applicant must be permitted to proceed with subsequent writ application on no more than a bare allegation of mental retardation, whether or not he would be allowed to proceed under the express provisions of Article 11.071, Section 5(a)(3).

*Blue*, 230 S.W.3d at 159.  The *Blue* court held that "*some* threshold of proof of mental retardation is appropriate" to the section 5(a)(3) inquiry.  *Id.* at 159 n.36.  The *Blue* court adopted an "evidence of a sufficiently clear and convincing character" standard under section 5(a)(3).  This standard resembles the *prima facie* review that *Rivera* held amounted to interweaving federal and state law. *See Blue*, 230 S.W.3d at 162; *see also Ex parte Woods*, 296 S.W.3d 587, 606 (Tex. Crim. App. 2009) (following *Blue*); *Ex parte Sells*, No. 62552-02, 2007 WL 1493151 (Tex. Crim App. May 23, 2007) (suggesting that the *prima facie* and section 5(a)(3) showings differ in evidentiary weight, not in nature) (unpublished).  The parties have not discussed whether Texas has incorporated a federal constitutional analysis into the section 5(a)(3) inquiry, thus "step[ping] beyond a procedural determination to examine the merits of an *Atkins* claim."  *Rivera*, 505 F.3d at 360.

Here, as in *Blue*, Guevara argued his mental retardation as the basis for the subsequent habeas application under section 5(a)(3).  The Court of Criminal Appeals cited *Blue* in dismissing Guevara's successive application.  The dismissal order does not reveal whether the court looked only at the statutory elements of section 5(a)(3) or reviewed the merits of the mental-retardation claim.  The parties have not discussed whether the Court of Criminal Appeals applied federal law in dismissing Guevara's *Atkins* claim.

The procedural posture of Guevara's *Atkins* claim is important. The record is insufficient to determine whether there is an independent state procedural ground that precludes federal habeas review. If no independent state procedural rule precludes federal review, the record is insufficient for this court to grant summary judgment on Guevara's *Atkins* claim. No state court fact-findings would guide this court's review of his *Atkins* claim (other than the Court of Criminal Appeals summary dismissal). *Cf. Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002) (stating that federal courts considering a summary judgment motion under the AEDPA defer to state fact-findings rather than construing facts in the nonmovant's favor), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004). Accordingly, this court must construe disputed facts in the light most favorable to Guevara. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor"). The respondent's summary judgment motion attacks the evidence Guevara relies on in making his *Atkins* claim, but provides no basis for this court summarily to deny relief under Rule 56. The parties have not identified what additional steps would be necessary to adjudicate the merits of Guevara's *Atkins* claim, should federal habeas review be available.

## IV. Conclusion

The respondent's summary judgment motion is denied, without prejudice. Any future motion and response must address whether TEX. CODE CRIM. PRO. art. 11.071 § 5(a) serves as an adequate and independent procedural bar in this case. While federal courts "have an independent duty to scrutinize the application of state rules that bar [federal] review of federal claims," *Cone v. Bell*, ___ U.S. ___, 129 S. Ct. 1769, 1782 (2009), "[t]he petitioner bears the burden of showing that the state did not strictly or regularly follow a procedural bar around the time of his [state court

action]." *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997). The respondent must file an amended answer and any related dispositive motion no later than **April 23, 2010**. Guevara will file an amended reply by **June 18, 2010**.

        SIGNED on February 22, 2010, at Houston, Texas.

                                    Lee H. Rosenthal
                                United States District Judge