IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **GILMAR ALEXANDER GUEVARA,** | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| -VS- | § | CIVIL NO. 4:08-cv-1604 |
| | § | |
| **RICK THALER,** | § | **\*\*DEATH PENALTY\*\*** |
| Director, Texas Department of | § | |
| Criminal Justice, Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent | § | |

## PETITIONER GILMAR'S BRIEF CONCERNING THE INTERPLAY BETWEEN STATE PROCEDURAL RULES AND FEDERAL HABEAS LAW

On June 9, 2010, Mr. Guevara filed an amended reply brief that, on order of this Court, addressed in detail the question of whether Mr. Guevara's *Atkins*[1] claim was procedurally defaulted. Procedural default occurs in federal court where a state court has disposed of a petitioner's federal constitutional claim on an independent and adequate state ground. *Cone v. Bell*, 129 S. Ct. 1769, 1780 (2009) (citing *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). In that brief, Mr. Guevara argued:

> (1) that, pursuant to *Moore v. Quarterman*, 533 F.3d 338 (5th Cir. 2008) (*en banc*), cause exists for any alleged procedural default due to the lack of any *Atkins* remedy during the period in which the state court default was alleged to have occurred and this Court could avoid the difficult question of whether procedural default occurred by assuming it *arguendo* and finding cause for the default;

_____

[1] *Atkins v. Virginia*, 536 U.S. 304 (2002).

1

(2) that the state ground upon which the state court rested its disposition of Mr. Guevara's *Atkins* claims was inadequate because the rule with which Mr. Guevara is alleged to have failed to comply (a) was not clearly announced at the time he is alleged to have failed to comply with it; (b) was substantially complied with in a way that did not thwart the state interests intended to be served by the rule; (c) did not provide a reasonable opportunity for Mr. Guevara to have his federal claim heard and determined by the state court; and/or (d) was used to deny review of an unwaivable federal right;

(3) that the state ground upon which the state court rested its disposition of Mr. Guevara's *Atkins* claim was not independent of federal law because (a) the Section 5(a)(3) standard applied to Mr. Guevara's claim is interwoven with federal law and the state court failed to make clear the procedural nature of its decision; and/or (b) Section 5(a)(1) standard applied to Mr. Guevara's claim is interwoven with federal law and the state court failed to make clear the procedural nature of its decision; and

(4) that any procedural default must be excused because Mr. Guevara's mental retardation renders him innocent of the death penalty and his execution a miscarriage of justice.

On November 29, 2010, this Court ordered the parties to brief how *Rocha v. Thaler*, 619 F.3d 387 (5th Cir. Sep. 9, 2010) [hereinafter *Rocha I*], *reh'g denied* 626 F.3d 815 (Nov. 17, 2010) [hereinafter *Rocha II*], and *Balentine v. Thaler*, 626 F.3d 842 (5th Cir. 2010), influence the question of whether the Texas Court of Criminal Appeals' dismissal in this case bars federal review of Guevara's *Atkins* claim.

First, *Rocha* and *Balentine* have no influence on any of Mr. Guevara's first, second, and fourth arguments regarding the propriety of federal merits review of his *Atkins* claim, summarized *supra* and contained in his Amended Reply. See Docket Entry 28 at 5-25, 35-39. Second, *Rocha* and *Balentine* confirm Mr. Guevara's third argument (3(a), *supra*) that the

Section 5(a)(3) standard is interwoven with federal law such that a decision on the merits must be presumed where the state court has failed to make clear that its judgment rests on a non-federal ground. Third, *Rocha* and *Balentine* do not affect Mr. Guevara's third argument (3(b), *supra*) that the Section 5(a)(1) standard is interwoven with federal law and that the state court decision in this case was not independent of federal law. *Rivera v. Quarterman*, 505 F.3d 349 (5th Cir. 2007), controls the analysis.

In this brief, Mr. Guevara will restate his rebuttal to the Director's allegation that the state court judgment disposing of the claim rested on a state-law ground that was independent of the federal question. Mr. Guevara does not abandon the other arguments made in his Amended Reply and re-urges them here.

## I.    Procedural Background.

On May 30, 2001, and following the return of a jury verdict, the 180th District Court of Harris County, Texas, issued a judgment sentencing Mr. Guevara to death. On June 20, 2002, before Mr. Guevara's conviction became final upon the conclusion of direct review, the United States Supreme Court decided *Atkins v. Virginia*, *supra*, prohibiting the execution of persons with mental retardation.[2] During the next six months following the *Atkins* decision

---

[2] Mr. Guevara's conviction and sentence were affirmed on direct appeal to the Texas Court of Criminal Appeals on January 15, 2003. *See Guevara v. State*, 97 S.W. 3d 579 (Tex. Crim. App. 2003). Although *Atkins* is a retroactive decision, it was decided before Mr. Guevara's case became final and its protections must apply to him just as if *Atkins* had been decided before his trial, *i.e.*, just as they would apply at trial to any current defendant. That *Atkins* was decided before Mr. Guevara's case became final has important consequences. Although the State has fundamental due process obligations towards Mr. Guevara in
(continued...)

and even beyond, Texas had no remedy for *Atkins* claims. *Moore v. Quarterman*, 533 F.3d 338, 341-42 (5th Cir. 2008) (*en banc*) (no remedy for *Atkins* claims existed in Texas courts as late as December 26, 2002).

Immediately following issuance of the judgment sentencing him to death, Mr. Guevara was appointed direct appeal and state habeas counsel. Under Texas law, Mr. Guevara's initial state habeas application had to be filed no later than December 25, 2002. Mr. Guevara's state habeas counsel filed that application on December 23, 2002. At that time, Texas had no remedy for *Atkins* claims, *Moore*, *supra*, and the application did not contain an *Atkins* claim.

On January 12, 2006, and while Mr. Guevara's first application was still pending in the state trial court, Mr. Guevara filed a subsequent state habeas application that alleged that his execution violated the Eighth and Fourteenth Amendments because he is a person with mental retardation. Texas Code of Criminal Procedure article 11.071 § 5 ("Section 5")

---

(...continued)

adjudicating his claim that he may not be sentenced to death because he is person with mental retardation, the State has *never* extinguished Mr. Guevara's life interest in not being sentenced to death if mentally retarded. Because his case was not final at the time *Atkins* was decided, Mr. Guevara is entitled to the full panoply of constitutional protections in adjudicating his *Atkins* claim as any current defendant would receive. These rights include, *inter alia*, the right to effective assistance of counsel in litigating his *Atkins* claim, the right to a hearing during which he may present live testimony and evidence, and the right to adequate investigative and expert resources to adequately present his defense. The burden is wholly on the State of Texas to extinguish Mr. Guevara's life interest at a proceeding in which Mr. Guevara's right to a meaningful opportunity to be heard on his mental retardation defense has been honored. Until the State does so, its judgment sentencing him to death is just as invalid as if it never had a sentencing proceeding at all.

4

governs treatment of subsequent state habeas applications. The plain text of the statute provides that a subsequent application is to be dismissed as an abuse of the writ unless the Court of Criminal Appeals determines that the application contains "sufficient specific facts" establishing at least one of three criteria: (1) the current claims have not been and could not have been presented previously in a timely initial application or in a previously considered application because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application (Section 5(a)(1); (2) by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt (Section 5(a)(2); or (3) by clear and convincing evidence, but for a violation of the United States Constitution no rational juror would have answered in the State's favor one or more of the special issues that were submitted to the jury in the sentencing phase (Section 5(a)(3)).

Mr. Guevara made three arguments in his subsequent application that he satisfied Section 5. First, Mr. Guevara argued that he satisfied Section 5(a)(1). As interpreted and applied by the CCA, Section 5(a)(1) could be satisfied if Mr. Guevara's application contained sufficient specific facts establishing (1) a *prima facie* case of mental retardation; and (2) that the legal basis for the mental retardation claim was unavailable when the applicant filed the previous application.[3] *Ex parte Brooks*, 219 S.W.3d 396, 400 (Tex. Crim. App. 2007). Mr.

---

[3] As the Fifth Circuit has understood, the CCA's interpretation and application of Section 5(a)(1) diverges from the plain text of the statute. While the plain text of the statute does not require consideration of the underlying federal claim, the CCA has engrafted a
(continued...)

Guevara argued that he satisfied Section 5(a)(1) because, although the Supreme Court had decided *Atkins* prior to his state-imposed deadline for filing his initial state habeas application, Mr. Guevara's mental retardation claim was nevertheless legally unavailable at that time because Texas had not provided the substantive and the procedural framework for adjudicating a mental retardation claim in the state.[4] Subsequent Application for Art. 11.071 Writ of Habeas Corpus, at 7 [hereinafter "Sub. App."]. Mr. Guevara also alleged that the allegations in the application and the evidence attached thereto established a *prima facie* claim for relief. Sub. App. at 2.

Second, Mr. Guevara asked the CCA to apply an exception to meeting the requirements of Section 5 in circumstances where a subsequent application is filed while the initial application remains pending in the trial court. Mr. Guevara argued that the filing of the subsequent application during the pendency of the first application demonstrated that he was "not engaging in any delaying tactics or unnecessarily prolonging litigation of the constitutional issues that are literally developing as his fate is decided." Sub. App. at 7.

Third, Mr. Guevara argued that his application satisfied Section 5(a)(3), allowing the filing of a subsequent claim when the facts show by clear and convincing evidence that, but for a violation of the United States Constitution, no rational juror would have answered one

---

(...continued)
"judicial gloss" on the statute that requires proving both prior unavailability and prima facie evidence of a meritorious federal constitutional claim. *Rocha II*, 626 F.3d at 832-33.

[4] That Texas had no *Atkins* remedy in December 2002 was subsequently confirmed by the Fifth Circuit sitting *en banc*. *Moore*, 533 F.3d at 341-42.

or more of the special issues in the State's favor. Sub. App. at 8. "Because Mr. Guevara is mentally retarded," the application urged, "his execution would violate the Eighth Amendment to the United States Constitution and 'no rational juror' would therefore be permitted to sentence him to death, by answering one or more of the special issues in the State's favor." *Id.*

The CCA dismissed Mr. Guevara's application as an abuse of the writ. Its order, in relevant part, read:

> This Court has also reviewed the record with respect to the application which was forwarded to this Court as a subsequent writ. On January 13, 2006, the trial court entered an order finding that said application was filed after the time period specified under Texas Code of Criminal Procedure, Article 11.071 §4(a) or 4(b). We agree with the trial court's determination. Further, we find that the application fails to meet one of the exceptions provided for in Section 5 of Article 11.071 and, thus, dismiss this subsequent application as an abuse of the writ. See *Ex parte Blue*, [230] S.W.3d [151], AP-75,254 (Tex.Crim.App. March 7, 2007).

Order, *Ex parte Guevara*, No. WR-63,926-01 (Tex. Crim. App. May 23, 2007).

## II.    Procedural Default and Independence

Procedural default is a federal, judicially-created doctrine in which a federal habeas court will not review federal constitutional claims presented in a habeas petition when the state court's decision rests upon a state-law ground that "is independent of the federal question and adequate to support the judgment." *Cone v. Bell*, 129 S. Ct. 1769, 1780 (2009) (citing *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). It is not always easy for a federal court to determine whether a state court decision rests on a ground of law that is independent

of the federal question. Because it is "important that ambiguous or obscure adjudications by state courts do not stand as barriers to a determination by [federal courts] of the validity under the federal constitution of state action," the Supreme Court has created a presumption in favor of federal review. *Florida v. Powell*, ___ U.S. ___, 130 S. Ct. 1195, 1201 (2010) (quoting *Minnesota v. National Tea Co.*, 309 U.S. 551, 557 (1940)). That presumption, called herein the *Long* presumption, was recently restated in *Powell, supra*, as follows:

> [W]hen . . . a state court decision fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion, [a federal court] will accept as the most reasonable explanation that the state court decided the case the way it did because it believed that federal law required it to do so.

*Id*. at 1201-02 (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-1041 (1983)). *See also Ake v. Oklahoma*, 470 U.S. 68, 75 (1985) ("[W]hen resolution of the state procedural law question depends on a federal constitutional ruling, the state-law prong of the court's holding is not independent of federal law, and our jurisdiction is not precluded."). The Court adopted a plain-statement rule that would avoid application of the presumption: "If the state court decision indicates clearly and expressly that it is alternatively based on bona fide separate, adequate, and independent grounds, [a federal court] will not undertake to review the [claim]." *Id*. at 1202 (quoting Long, 463 U.S. at 1041). Thus, an ambiguity "from the face of the [state court] opinion" about whether the state court decision relied on an independent

state ground will raise the *Long* presumption. A "clear and express" statement of reliance on an independent state ground is necessary to defeat it.

Moreover, because procedural default is an affirmative defense to a habeas corpus petition, the burden is on the Respondent to demonstrate the state court decision's independence. *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010) (because procedural default constitutes an affirmative defense in habeas cases, the burden rests with a state to prove the adequacy of the relied-on procedural bar); *Pike v. Guarino*, 492 F.3d 61, 73 (1st Cir. 2007) ("The habeas respondent ... bears the burden 'not only of asserting that a default occurred, but also of persuading the court that the factual and legal prerequisites of a default . . . are present.'" (*quoting* 2 Randy Hertz & James S. Liebman, *Federal Habeas Corpus Practice and Procedure* § 26.2a, at 1265 n.5 (5th ed. 2005))).

## III.    The Judgment Applying a State Procedural Bar to Mr. Guevara's *Atkins* Claim Is Not Based on an Independent State Ground Because the Section 5(a)(3) Standard Applied to Mr. Guevara's Claim is Entangled in Federal Law and the State Court Failed to Make Clear the Procedural Nature of Its Decision.

The state court decision disposing Mr. Guevara's *Atkins* claim was not based on an independent state ground because Section 5(a)(3)—as interpreted by the CCA in *Ex parte Blue*, 230 S.W.3d 151 (Tex. Crim. App. 2007), and which the CCA relied upon in disposing Mr. Guevara's *Atkins* claim—requires consideration of the underlying federal constitutional claim.

9

In the immediate aftermath of the Supreme Court's decision in *Atkins*, Texas did not—through any branch of its government—promulgate procedural or substantive rules for adjudicating the newly recognized right not to be executed if mentally retarded. As the custom of raising such claims in applications filed pursuant to Article 11.071 developed, the CCA eventually developed a body of caselaw on how those claims would be disposed when raised in such applications.

For death-sentenced persons whose trials and initial 11.071 applications had been filed prior to the *Atkins* decision, mental retardation claims raised in subsequent 11.071 applications were required to meet one of the requirements of Section 5, the gateway to full consideration of claims raised in subsequent applications. Consistent with its interpretation of Section 5(a)(1), *supra*, the CCA held that *Atkins* claims that were raised in the petitioner's first subsequent application post-dating the *Atkins* decision could meet Section 5(a)(1) by relying on *Atkins* as the previously unavailable "legal basis" and by alleging in the application "sufficient specific facts" showing a *prima faci*e claim of mental retardation. *Briseno*, 135 S.W.3d at 5 n.7.

As this Court recognized in its order denying summary judgment, the Fifth Circuit in *Rivera v. Quarterman*, *supra*, held that a state court judgment resting on this kind of analysis is not an independent ground because of its entanglement with federal law unless the state court makes clear the procedural nature of the disposition, *i.e.*, explicitly holds that the claim is dismissed because the claim was previously available. The *Rivera* Court wrote,

10

The application of Texas' abuse of the writ doctrine to *Atkins* claims is entangled in federal law in much the same way as Oklahoma's waiver doctrine was in *Ake*; "in the *Atkins* context, Texas courts have imported an antecedent showing of 'sufficient specific facts' to merit further review, rendering dismissal of such claims [as abuses of the writ] a decision on the merits." That is, to decide whether an *Atkins* claim is an abuse of the writ, the CCA examines the substance of the claim to see if it establishes a prima facie case of retardation, and only upon deciding that question can the state court decide whether remand is appropriate. Thus, a decision that an *Atkins* petition does not make a prima facie showing—and is, therefore, an abuse of the writ—is not an independent state law ground.

*Id*. at 359 (footnotes omitted). *See also id*. at 359-60 ("[W]here the threshold a state sets turns on a merits determination of federal law *or fails to make clear that it is procedural in nature*, that decision is reviewable." (emphasis supplied)).

In *Ex parte Blue*, *supra*, the CCA was presented for the first time with a scenario in which, like this case, the petitioner had not raised his *Atkins* claim in an intervening application filed after *Atkins* had been decided. The petitioner in *Blue* argued (1) that his *Atkins* claim was not waivable; and (2) that he met the Section 5(a)(3) standard to have his claim authorized.[5] *Blue*, 230 S.W.3d at 153. The CCA held that Section 5(a)(3), which does not require a finding that the legal basis was previously unavailable, could be satisfied where the subsequent application "'contain[s] sufficient specific facts' that, if true, would establish

---

[5] Unlike Mr. Guevara, the petitioner in *Blue* did not make any argument that he satisfied the Section 5(a)(1) standard. Accordingly, the *Blue* decision did not address the specific argument that Mr. Guevara made related to legal unavailability of his claim, *i.e.*, that despite the Supreme Court's having decided *Atkins* prior to the filing of Mr. Guevara's initial application, the state's failure to articulate any procedural or substantive standards for raising and adjudicating the claim rendered the claim legally unavailable.

11

'by clear and convincing evidence' that no rational fact finder would fail to find him mentally retarded." *Id.* at 162 (quoting Tex. Code Crim Proc. art. 11.071 §5(a)(3)).

The Fifth Circuit's *Rivera* decision affords no basis for distinguishing this kind of analysis from the one at issue in *Rivera* itself. The only difference between the Section 5(a)(1) standard and the Section 5(a)(3) standard as they are interpreted and applied by the state court is the burden that the factual allegations in the pleading must meet at the threshold. *Rivera* does not turn on the magnitude of the pleading burden; it turns exclusively on the entanglement of state and federal law, an entanglement that exists equally in both the Section 5(a)(1) and 5(a)(3) contexts.[6] Accordingly, *Rivera* dictates that the state court judgment in this case purportedly applying the standard announced in *Blue* is not independent of federal law and therefore does not preclude federal review of Mr. Guevara's *Atkins* claim.[7]

---

[6] In its order denying summary judgment, this Court expressed that, read broadly, "the *Rivera* opinion could prevent section 5(a) from barring federal habeas review of any *Atkins* claim." Docket Entry 26 at 8. Mr. Guevara submits that the prospect of Section 5(a) failing to ever bar federal habeas review of *Atkins* claims is not so much a consequence of how *Rivera* is read as it is a consequence of how the CCA has chosen—and will choose in the future—to interpret and apply Section 5. Although Section 5 has been interpreted to include federal components, nothing in Section 5 prevents the state court from issuing a judgment in which it is clear and express about the ***non-federal*** reasons why it is dismissing the claim in any given case. In short, while state courts have no leeway or interest in adjudicating cases in particular ways *solely* to preclude federal review, it remains fully within the power of the state to enact, interpret, and apply procedural rules that serve legitimate state interests in a way that has the effect of precluding federal review. The state court is fully empowered to resolve ambiguities in its orders.

[7] *Rivera* holds that 28 U.S.C. § 2254(d) applies under these circumstances. Assuming it does apply, this Court must identify the proper holding of the CCA to which such deference is owed. This issue is more complicated than it might appear on the surface, and,
(continued...)

The Director's attempt to distinguish *Rivera* from the instant case on the ground that Section 5(a)(3) operates as a "gateway" that requires the CCA to consider only the factual allegations in the pleading instead of the merit of the constitutional claim fails. First, all subsections of Section 5(a), including Section 5(a)(1) at issue in *Rivera*, operate as "gateways." There is nothing inherent in being a "gateway" that precludes its incorporation of the federal question. A gateway can be independent of the underlying federal question or dependent upon it. That choice, however, has consequences. *Rocha II*, 626 F.3d at 831 (discussing the choice the Texas state court made to require a *prima facie* showing of the merits of an *Atkins* claim in the Section 5(a)(1) gateway and how that choice "came with costs"—*i.e.*, that the "prima-facie review meant that CCA decisions dismissing *Atkins* claims for failure to satisfy § 5(a)(1) rested on the merits of those claims").

Second, there is no basis in Texas case law for drawing any distinctions between the way in which Section 5(a)(1) is applied and Section 5(a)(3) is applied—at least in the *Atkins* context—and the Director accordingly fails to cite any such law. Indeed, such a distinction is spurious, particularly given the CCA's analogizing of the Section 5(a)(3) requirement to the Section 5(a)(1) requirement in *Blue* itself. *See Blue*, 230 S.W.3d at 162.

Finally, that the CCA's disposition of an *Atkins* claim under *Blue* is not independent and does not preclude federal review is the law of this District. In *Blue v. Thaler*, No. 4:05-

_____

(...continued)

should the Court hold that the CCA's judgment is not independent under *Rivera*, Mr. Guevara respectfully requests the opportunity to provide further briefing to the Court regarding the applicability of 28 U.S.C. § 2254(d) to his claim.

cv-02726 (S.D. Tex. 2008), this Court held that the petitioner's *Atkins* claim, despite the

CCA's disposition of it in *Ex parte Blue* itself, was reviewable:

> [T]he Court of Criminal Appeals held that "some threshold of proof of mental
> retardation is appropriate" to filter out completely meritless *Atkins* claims in
> the 5(a)(3) context. The *Blue* court imposed a judicial gloss over the section
> 5(a)(3) requirements, forcing an inmate to bring clear and convincing evidence
> of retardation before proceeding in a successive state habeas action.

Memorandum and Order at 14, *Blue v. Thaler*, No. 4:05-cv-02726 (S.D. Tex. Aug. 19, 2010)

(citations omitted).

Neither the *Rocha* nor the *Balentine* decisions alter this analysis. *Rocha* concerned a

petitioner who raised an ineffective-assistance-of-counsel claim relating to the sentencing

phase of his capital trial (*Wiggins*[8] claim) for the first time in federal court. When Rocha

presented his claim to the state court in a subsequent habeas application, he argued that he

met the legal standard for having his claim considered because he met the conditions in

Section 5(a)(3). The state court dismissed Rocha's subsequent state habeas application in an

order that read, "We have reviewed the application and find that the allegations do not satisfy

the requirements of Article 11.071, Section 5(a)(3). Therefore, we dismiss this application

as an abuse of the writ." *Rocha I*, 619 F.3d at 399.

After dismissal, Rocha returned to federal court and argued that his *Wiggins* claim was

not procedurally defaulted because the state court's application of Section 5(a)(3) to dismiss

his claim was not independent of federal law. The Fifth Circuit held that Rocha was not

---

[8] *Wiggins v. Smith*, 539 U.S. 510 (2003).

entitled to have his *Wiggins* claim reviewed on the merits by the federal court. *Id*. at 405. To reach that conclusion, the Court concluded that the CCA's interpretation and application of Section 5(a)(3) was identical to the federal *Sawyer v. Whitley*, 505 U.S. 333 (1992), standard for actual innocence of the death penalty.[9] *Id*. at 402-03. The Court then held that the petitioner in *Rocha* could not satisfy the *Sawyer* actual-innocence-of-the-death-penalty standard, because a claim of innocence of the death penalty must tend to negate not just the jury's discretion to impose a death sentence but the petitioner's very eligibility for that punishment. *Id*. at 405. Rocha's claim that he was deprived of effective assistance of counsel in the sentencing phase did not go to death-eligibility but to death-worthiness. *Id*.

The *Rocha* Court issued a second opinion denying panel rehearing and clarifying its previous opinion. After restating the petitioner's argument as having been that Section 5(a)(3) required the state court to pass on the merits of Rocha's underlying *Wiggins* claim, the opinion drew a sharper distinction between a state habeas petitioner's "gateway innocence claim" and an "underlying constitutional claim," which the *Rocha* Court

---

[9] Mr. Guevara agrees with the *Rocha* Court that the CCA has compared the Section 5(a)(3) standard to the standard in *Sawyer*; however, Mr. Guevara disagrees that the CCA actually applies the Section 5(a)(3) standard like a federal court applies the *Sawyer* standard. The *Sawyer* standard requires a federal court to determine whether it has been established by clear and convincing evidence that no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law but for the alleged constitutional error. The CCA, by contrast, determines whether the petitioner has made a threshold showing, by clear and convincing evidence, of the *underlying constitutional error* itself. As will be seen *infra*, however, this disagreement does not affect the analysis in this case because even the *Rocha* Court recognized that the Section 5(a)(3) does require consideration of the merits of eligibility claims like *Atkins* claims.

15

concluded was "nowhere more clear than in the context of a *Wiggins* claim of ineffective assistance of counsel at sentencing." *Rocha II*, 626 F.3d at 825.

> When we consider a properly presented *Wiggins* claim, we determine whether the petitioner was prejudiced by counsel's deficient performance by reweighing "'the evidence in aggravation against the totality of the available mitigating evidence'" and asking whether the petitioner "has shown that, had counsel presented all the available mitigating evidence, there is a reasonable probability that a juror would have found that the mitigating evidence outweighed the aggravating evidence." The contrast between that analysis and our analysis of an actual-innocence-of-the-death-penalty claim is stark. The quality of the mitigation evidence the petitioner would have introduced at sentencing has no bearing on his claim of actual innocence of the death penalty. Evidence that might have persuaded the jury to decline to impose the death penalty is irrelevant under *Sawyer*. The only question is whether the petitioner was eligible for the death penalty. The distinction between these two inquiries further underscores the basic point that the CCA did not decide the merits of Rocha's *Wiggins* claim when it concluded that Rocha is not actually innocent of the death penalty.

*Id*. at 825-26. In short, the *Rocha* Court simply construed Section 5(a)(3) so as to exclude a *Wiggins* claim entirely from its reach. Under this construction of the statute, it necessarily follows that the CCA's dismissal of the claim could not have been intertwined with its view of the merits of the underlying *Wiggins* claim.

Unlike the *Wiggins* claim in *Rocha*, the claim that Mr. Guevara alleges was disposed on a ground not independent from federal law *is* an eligibility claim—an *Atkins* claim that his mental retardation renders him ineligible for the death penalty. *Rocha II* noted that there would be such claims, and expressly disclaimed any control over them:

> There may well be some exceptions to the rule that a decision on the gateway innocence claim does not constitute a decision on the underlying constitutional

16

claim. As Judge Dennis has previously recognized, an *Atkins* claim is a claim that the petitioner is ineligible for the death penalty. So too is a claim that the petitioner was under eighteen at the time of his crime, is insane, or has some other characteristic that the Supreme Court has held categorically justifies exemption from the death penalty. In such cases, the inquiry into the gateway innocence claim will substantially overlap with the inquiry into the merits of the underlying constitutional claim. ***Our panel opinion's holding does not implicate this limited class of cases***, as Rocha's *Wiggins* claim is not a claim of categorical ineligibility for the death penalty.

*Id*. at 826-27 (emphasis supplied and footnotes omitted). Thus, the *Rocha* opinions shed no

new light on how this Court should resolve the Director's allegation that Mr. Guevara's

*Atkins* claim is procedurally defaulted.

The *Balentine* decision likewise does not alter the above analysis. *Balentine* concerned

a petitioner who, like the *Rocha* petitioner, raised a *Wiggins* claim for the first time in federal

court. When he presented that claim to the state court in a subsequent habeas application, the

state court dismissed it in an order that read, "We have reviewed the application and find that

his allegations fail to satisfy the requirements of Article 11.071 § 5. Accordingly, applicant's

application is dismissed, and his motion to stay his execution is denied." *Balentine*, 626 F.3d

at 851.

The Court held that this disposition of Balentine's *Wiggins* claim was independent of

federal law, because Mr. Balentine, in its independent analysis, did not satisfy the plain text

of Section 5, including Section 5(a)(3).[10] The *Balentine* Court relied on *Rocha I*'s conclusion

---

[10] Mr. Guevara believes that the *Balentine* decision does not appropriately apply the federal procedural default analysis. Whether a state court disposition is independent is not determined by asking whether, in the federal court's judgment, the petitioner satisfied the
(continued...)

17

that Section 5(a)(3) excludes *Wiggins* claims from its purview as a legal matter. *Balentine*, 626 F.3d at 856; *see also Rocha II*, 626 F.3d at 839 ("*Balentine* [] holds ... that a *Wiggins* claim is not a claim of actual innocence of the death penalty."). Because neither the *Rocha* decisions nor *Balentine* concern an eligibility claim for which Section 5(a)(3) is applicable, none of these cases affect Mr. Guevara's argument that the state court's disposition of his *Atkins* claim is not independent of federal law because the standard it applied requires consideration of the underlying federal constitutional claim.

In sum, the state court's disposition of Mr. Guevara's *Atkins* claim is not independent of federal law because Section 5(a)(3)—as interpreted and applied by the state court in *Ex parte Blue*—requires the Court to assess the merits of the underlying federal claim. Because the state court disposition is not independent of the federal claim, the Director's allegation that the claim is procedurally defaulted must fail.

**IV.    The Judgment Dismissing Mr. Guevara's *Atkins* Claim Is Not Based on an Independent State Ground Because Section 5(a)(1) Is Interwoven with Federal Law and the CCA Did Not Clearly and Expressly Reject the Claim on a Ground Independent from the Federal Question.**

In the Director's attempt to support its allegation that Mr. Guevara's Atkins claim is procedurally defaulted, the Respondent has also argued that *Rivera v. Quarterman*, 505 F.3d 349 (5th Cir. 2007), is not applicable because Mr. Guevara's claim was not considered by the CCA under Section 5(a)(1). As discussed, *supra*, *Rivera* held that the CCA's requirement

_____

(...continued)
elements of the state procedural law allegedly applied.

18

of a *prima facie* showing of mental retardation in its application of Section 5(a)(1) in the *Atkins* context is entangled with federal law and that this entanglement renders the state court decision non-independent when it "turns on a merits determination of federal law or fails to make clear that it is procedural in nature." *Rivera*, 505 F.3d at 359-60.

The Director's assertion that, "In light of *Blue*, the Court of Criminal Appeals was tasked solely with determining whether the *Atkins* claim satisfied Section 5(a)(3)'s requisite threshold showing of 'clear and convincing evidence' that 'no factfinder would fail to find mental retardation'" is false. Respondent's Amended Answer at 26. Section 5(a) is disjunctive, and an application may be authorized if it meets any one of the three exceptions. Tex. Code Crim. Proc. art. 11.071 § 5(a)(1)-(3). This means the CCA must review the application under each subsection in its authorization assessment before dismissing it. The CCA's dismissal of Mr. Guevara's application is, therefore, a determination, *inter alia*, that the claim did not meet any of the requirements of Section 5(a), including Section 5(a)(1). The CCA's order in this case is clear that it examined the application against each exception.

Importantly, and as noted, *supra*, Mr. Guevara made a sound argument to the state court specifically that his *Atkins* claim *was* legally unavailable under Section 5(a)(1) at the time he filed his initial application because no procedural vehicle or substantive standards had been articulated by the state for raising and adjudicating such a claim.[11] Although the CCA's citation to *Blue* suggests that to be the reason why the state court found Mr.

_____

[11] The Fifth Circuit, sitting *en banc*, subsequently adopted this argument without dissent in the context of cause for default in another case. *Moore*, 533 F.3d at 341.

Guevera's application failed to satisfy Section 5(a)(3), the CCA's order did **not** address why it rejected Mr. Guevara's argument under Section 5(a)(1), although its dismissal means it must have held that Mr. Guevara failed to meet that standard.[12]

Contrary to the Director's assertion, nothing in *Blue* precluded the state court from reviewing Mr. Guevara's application under Section 5(a)(1) or from finding that the circumstances of Mr. Guevara's case satisfied Section 5(a)(1). Indeed, the petitioner in *Blue*, unlike Mr. Guevara, did not make any argument that he had satisfied Section 5(a)(1). Consequently, *Blue* did not address in any way why Section 5(a)(1) could not be satisfied under circumstances like Mr. Guevara's case. *Blue* dictated the circumstances under which Section 5(a)(3) may be satisfied; it did not dictate the circumstances under which Section 5(a)(1) may *not* be satisfied. Accordingly, the CCA has given no indication in this case as to the basis of its decision that Mr. Guevara failed to meet the Section 5(a)(1) standard. In short, it did not "make clear that [its dismissal] is procedural in nature." *Rivera*, 505 F.3d at 359-60.

The Director concedes that *Rivera* holds that state court *Atkins* claims are considered under Section 5(a)(1) using a standard that is interwoven with the federal constitutional claim

---

[12] Importantly, this question is not at all resolved by the citation to *Blue*. In *Blue*, the petitioner made no attempt to argue that he had satisfied Section 5(a)(1):

> Although the applicant filed his initial post-conviction application for writ of habeas corpus almost a year *after* the Supreme Court decided *Atkins*, the applicant failed to raise the issue of mental retardation in that initial writ application. He therefore makes no attempt to argue that we have authority to review his claim under Article 11.071, Section 5(a)(1) of the Code of Criminal Procedure.

*Blue*, 230 S.E.3d at 153.

and that federal review of the claim is therefore not precluded where the state court has failed to "make clear that it is procedural in nature." *Rivera*, 505 F.3d at 359-60; Amended Answer at 24-25. Given the CCA's incorporation of review of the underlying federal claim into Section 5(a)(1), the CCA's failure to explain why it rejected Mr. Guevera's mental retardation claim under that provision—*i.e.,* its failure to "make clear that it is procedural in nature"—means that federal review is not precluded under a straightforward reading of *Rivera*.

Because the CCA held that Mr. Guevara failed to meet the Section 5(a)(1) standard, but failed to make clear that its decision was procedural in nature rather than resting on its view of the merits of the federal claim, no procedural default could have occurred under *Rivera*. Neither *Rocha* nor *Balentine* alter this analysis. Neither the *Rocha* petitioner nor the *Balentine* petitioner raised an *Atkins* claim, nor did either make a Section 5(a)(1) argument in their applications. *Balentine*, 626 F.3d at 855; *Rocha I*, 619 F.3d at 401. The *Balentine* Court explicitly premised its conclusion with respect to Section 5(a)(1) on the finding that Balentine had not made any Section 5(a)(1) argument to the state court.[13] *Balentine*, 626 F.3d at 855 ("Balentine's subsequent application made no effort to show that the facts or law underlying his *Wiggins* claim were unavailable to him at the time of his first state application.

---

[13] While the *Balentine* Court, when discussing the import of the state court decision, wrote that "[t]here must be more than silence," this must be understood within the context of the Court's finding that Balentine did not make any argument in his state application that the legal or factual basis for his claim was previously unavailable. The state court decision in that case lacked ambiguity absent any argument to be addressed. Balentine does not control this case.

... Therefore, Section 5(a)(1) was not satisfied."). *Rocha II*, albeit in *dicta*, characterized the *Balentine* decision as being rooted in the fact that "[t]here was no question that the legal basis for Balentine's claims was available when he filed his first state habeas application in 2001." *Rocha II*, 626 F.3d at 838.

By contrast, Mr. Guevara did make a Section 5(a)(1) argument that his *Atkins* claim was legally unavailable at the time he filed his previous application—an argument that the *en banc* Fifth Circuit itself has unanimously endorsed in a different context. *Moore*, 533 F.3d at 341. Thus, there is very much a question whether the legal basis for Mr. Guevara's *Atkins* claim was available when he filed his first state habeas application on December 23, 2002. The CCA's failure to make clear that its rejection of the claim under Section 5(a)(1) was procedural in nature renders it an "ambiguous adjudication" by the state court that may not "stand as [a] barrier[] to a determination by [federal courts] of the validity under the federal constitution of state action." *Powell*, 130 S. Ct. at 1201. *Rivera* and *Long* require federal review.

## V.   The Rule with Which Mr. Guevara Is Alleged to Have Failed to Comply Is Inadequate Because It Violates Mr. Guevara's Constitutional Rights to Due Process and to the Effective Assistance of Counsel.

In addition to the arguments made in his Amended Reply, described *supra*, and the arguments re-explicated here in view of the recent Fifth Circuit decisions in *Rocha* and *Balentine*, Mr. Guevara additionally asserts that the judgment disposing of his *Atkins* claim is inadequate because it violates Mr. Guevara's constitutional right to the effective assistance

of counsel in adjudicating his mental retardation claim. The state owes Mr. Guevara this protection because Mr. Guevara's conviction was not final when the Supreme Court decided *Atkins*. Thus, the state has an affirmative duty to extinguish Mr. Guevara's life interest in not being executed if mentally retarded before its judgment sentencing him to death can be valid. The state may validly extinguish Mr. Guevara's life interest in not being executed if mentally retarded only in a judicial adjudication that affords Mr. Guevara the full panoply of due process and constitutional protections that he would have been entitled to had the Atkins decision been issued before his trial instead of after his trial. *See, e.g., State v. Grell*, 135 P.3d 696, 702 (Ariz. 2006) (although *Atkins* left to the states development of the means of enforcement, the procedures developed must comport with the Constitution). *Morris v. State*, 956 So.2d 431, 452-53 (Ala. Crim. App. 2005) (denial of expert assistance to present defense case of mental retardation at trial violated due process); *State v. Harris*, 859 A.2d 364, 442-45 (N.J. 2004) (violates due process to deprive a capital defendant of the opportunity to present evidence, including expert testimony, to support a bona fide claim of mental retardation); *State v. Canez*, 74 P.3d 932, 938 (Ariz. 2003) ("Due process demands that [the defendant] receive a hearing at which the court considers the mental retardation evidence under the constitutional principles announced in Atkins …"); *Pruitt v. State*, 834 N.E.2d 90, 101-03 (Ind. 2005) (due process violated by requiring defendant at trial to prove mental retardation by clear and convincing evidence, relying on *Cooper v. Oklahoma*, 517 U.S. 348 (1996)). This includes the right to the effective assistance of counsel.

If this Court holds (1) that a remedy existed For Mr. Guevara's Atkins claim existed when Mr. Guevara filed his initial application on December 23, 2002; (2) that the remedy was clearly announced at the time he is alleged to have failed to comply with it; (3) that Mr. Guevara Mr. Guevara failed to substantially comply with the state rule for raising his Atkins claim in a way that thwarted the state interests intended to be served by the rule; (4) that the state rule Mr. Guevara failed to substantially comply with provided a reasonable opportunity for Mr. Guevara to have his federal claim heard and determined by the state court; and (5) that the federal right at issue is waivable, then it necessarily follows that Mr. Guevara was deprived of the effective assistance of counsel in adjudicating his *Atkins* claim. The state rule applying a higher burden on Mr. Guevara to obtain consideration of his *Atkins* claim violates his right to effective assistance of counsel and due process. Such a rule is inadequate to preclude federal review.

## CONCLUSION

For the foregoing reasons, Mr. Guevara requests that this Court:

(1)   hold that there is cause and prejudice to excuse any alleged procedural default of Mr. Guevara's Atkins claim;

(2)   alternatively, hold that the state court disposition of Mr. Guevara's Atkins claim is not independent and adequate of federal law and thus no federal procedural default has occurred;

(3)   alternatively, hold that a miscarriage of justice would result if Mr. Guevara's Atkins claim is procedurally

24

defaulted because Mr. Guevara's mental retardation renders him ineligible for a death sentence;

(4)     hold an evidentiary hearing on whether Mr. Guevara is a person with mental retardation; and

(5)     grant any other relief to which he may be entitled.

Respectfully Submitted,

*/s/ Jani Maselli*

_____

JANI J. MASELLI
State Bar of Texas Number 00791195
808 Travis Street, 24th Floor
Houston, Texas 77002
(713) 757-0684
Attorney for Petitioner,
Gilmar Alexander Guevara

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of February, 2011, a true and correct copy of the foregoing pleading was served by ECF to:

Assistant Attorney General
Katherine D. Hayes
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548

*/s/ Jani Maselli*

_____

JANI MASELLI

25