IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **GILMAR ALEXANDER GUEVARA,** | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| | § | |
| -VS- | § | CIVIL NO. 4:08-cv-01604 |
| | § | |
| | § | *CAPITAL CASE* |
| | § | |
| **RICK THALER**, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

_____

## MOTION TO ALTER OR AMEND JUDGMENT

Petitioner Gilmar Guevara requests that this Court alter or amend its judgment. Fed. R. Civ. P. 59(e).

Regarding the disposition of Mr. Guevara's *Atkins* claim,[1] this Court legally erred when, in deciding whether this Court's power to grant relief was foreclosed under 28 U.S.C. § 2254(d), it simply analyzed whether Mr. Guevara satisfied the Texas gate-keeping standard for consideration of subsequent post-conviction applications. The Court also committed legal error in analyzing whether Mr. Guevara made a *prima facie Atkins* case to the Texas court. The Memorandum indicates that this Court effectively adjudicated the claim by weighing the proffered evidence and making unwarranted credibility determinations, instead of determining whether the evidence, viewed in the light most favorable to Mr. Guevara, was sufficient as a

_____

[1] *Atkins v. Virginia*, 536 U.S. 304 (2002).

matter of law to permit a fact-finder to infer that Mr. Guevara is a person with mental retardation ("MR"). Docket Entry 48 at 9-21.

Regarding the disposition of Mr. Guevara's *Strickland* claim, the Court legally erred when it conflated the issues of whether Mr. Guevara's *Strickland* claim was meritorious with whether the Court's power to grant relief was proscribed by Section 2254(d). By conflating the two inquiries, the Court effectively held Mr. Guevara to a higher burden of proof on his *Strickland* claim than the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") requires. Docket Entry 36 at 26-38.

I.   **THE COURT LEGALLY ERRED IN DISPOSING OF MR. GUEVARA'S ATKINS CLAIMS.**

  A.   **The Court Legally Erred When It Used the Wrong Standard for Determining Whether Section 2254(d) Was Satisfied By the State Court's Deprivation of Due Process.**

In making the Section 2254(d) determination, the court misapplied *Blue v. Thaler*, 665 F.3d 647 (5th Cir. 2011). It understood *Blue* to hold that when *prima facie* evidence of an *Atkins* claim is presented to a state court, the state court's adjudication of the merits of the claim without first affording the applicant a hearing and a meaningful opportunity to be heard constitutes an unreasonable application of federal law that requires federal review of the claim unencumbered by the deference AEDPA normally requires. Docket Entry 48 at 9-21. However, when the Court assessed whether Mr. Guevara had presented *prima facie* evidence of an *Atkins* claim to the state court, the Court merely analyzed whether Mr. Guevara met the state statutory threshold showing for authorization of a subsequent application applied by the state court. *Id.* It did not consider the antecedent issue at issue in *Blue*, whether the state court violated the due process clause of the federal constitution. This court skipped the question of federal law; it merely determined whether Mr. Guevara satisfied the state rule of decision. Those standards are not the same, and a state

decision that violates due process is, under clear Supreme Court precedent, an "unreasonable application" of clearly established federal law. *Panetti v. Quarterman*, 551 U.S. 930 (2007).

In June 2002, The Supreme Court recognized the right of a person with MR to be exempt from execution. 536 U.S. 304 (2002). *Atkins* delegated implementation of the exemption to the states. *Id.* at 317 ("As was our approach in *Ford v. Wainwright*, [477 U.S. 399 (1986),] with regard to insanity, 'we leave to the States the task of developing appropriate ways to enforce the constitutional restriction upon its execution of sentences.'") (citing *Ford*, 477 U.S. at 405, 416-17). The Supreme Court decided *Atkins* while Mr. Guevara's conviction and capital sentence were still pending on direct review. By state statute, Mr. Guevara's initial post-conviction application was due on December 23, 2002. At that time, Texas had yet to announce any substantive or procedural rules to govern its adjudication and enforcement of the right. *See Moore v. Quarterman*, 533 F.3d 338 (5th Cir. 2008) (en banc) (Texas had yet to articulate a remedy to enforce the *Atkins* prohibition as of December 26, 2002). Because Texas had not indicated what rule of decision controlled *Atkins* claims, nor even by what vehicle or procedure such claims should be raised, Mr. Guevara did not include one in his initial 11.071 application.

After Texas announced rules for adjudicating *Atkins* claims within the state,[2] Mr. Guevara filed another 11.071 application raising his *Atkins* claim. The Texas Court of Criminal Appeals ("TCCA") dismissed the application as an abuse of the writ, citing *Ex parte Blue*, 230 S.W.3d 151 (Tex. Crim. App. 2007). In *Blue*, the TCCA had dismissed a subsequent state post-conviction application for failing to make a threshold showing of MR by clear and convincing

---

[2] As noted above, the Texas legislature failed to put in place a statutory framework for enforcing the *Atkins* prohibition of executing the mentally retarded. In the absence of such legislative action, the TCCA announced in *Ex parte Briseno* what it termed "judicial standards for courts considering [*Atkins*] claims under article 11.071." 135 S.W.3d 1, 5 (Tex. Crim. App. 2004).

evidence. *Id*. Accordingly, although the subsequent 11.071 application Mr. Guevara filed was his first opportunity following Texas's adoption of an *Atkins* remedy to raise his *Atkins* claim, the TCCA required Mr. Guevara to make a threshold showing of MR by clear and convincing evidence before affording him a hearing or any additional process on the merits.[3]

In federal court, the *Blue* petitioner contended that he was entitled to federal review of his *Atkins* claim, notwithstanding the dismissal of his state *Atkins* claim under Texas's abuse of the writ rules. He asserted that the order of dismissal assessing whether he made a threshold showing of MR by clear and convincing evidence was not independent of federal law and thus did not create a procedural default. The Fifth Circuit agreed that the TCCA dismissal did not create a procedural default. It further held that, although 28 U.S.C. § 2254(d) applies only to claims "adjudicated on the merits" in a state proceeding, § 2254(d) nevertheless applied to Blue's *Atkins* claim because the dismissal was a merits adjudication.[4] 665 F.3d at 656-57. Just because the § 2254(d) limit on relief applies, however, does not mean that the federal court cannot grant relief on the merits—a federal court must adjudicate the merits of the claim if the prisoner can satisfy one of the two § 2254(d) subsections.

Section 2254(d)(1) permits a federal court to adjudicate the claim and grant relief if the state merits adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the

---

[3] Mr. Guevara has maintained that the TCCA's application of a higher standard to and dismissal of his *Atkins* claim under the circumstances of his case violated Mr. Guevara's rights to due process and effective assistance of counsel, rights to which he was entitled on his first opportunity to raise an *Atkins* defense. *See* Docket Entry 32 at 22-24.

[4] Although Mr. Guevara recognizes that *Blue* holds that a state court dismissal under these circumstances constitutes an adjudication on the merits, Mr. Guevara preserves his argument that the dismissal, while not independent of federal law, nevertheless is not an adjudication on the merits within the meaning of Section 2254(d). *See Prevatte v. French*, 459 F.Supp.2d 1305, 1382 (N.D.Ga. 2006).

4

United States[.]" *Blue* held that a prisoner satisfies Section 2254(d)(1) if (s)he makes a *prima facie* showing of MR to the state court and the state court nevertheless fails to afford an opportunity to develop the claim. 665 F.3d at 656, 657. In this circumstance, the due process violation constitutes an unreasonable application of clearly established federal law sufficient to permit the federal court to decide the claim on the merits free from the deferential constraints of AEDPA. *Id.* at 657. "This rule stems from the fact that *Atkins* created and protects a significant substantive liberty interest, a liberty interest that entitles the petitioner to a set of core procedural due process protections: the opportunity to develop and be heard on his claim that he is ineligible for the death penalty." *Id. See also Panetti*, 551 U.S. at 949, 952.

In making its determination of whether the *Blue* petitioner had presented a "*prima facie* valid" *Atkins* claim to the state court, the *Blue* Court assumed the allegations and evidence presented were true, and asked whether it could support a finding of MR.[5] 665 F.3d at 657. The *Blue* Court concluded that a *prima facie* valid *Atkins* claim was not presented to the state court by Blue because "Blue failed to tender evidence to the CCA that, if true, establishes that he exhibits significantly subaverage general intellectual functioning." *Id.* at 658. Specifically, "Blue did not present the CCA with evidence that he had attained a full-scale IQ score of 75 or lower." *Id.* at 659.

In assessing this question in the present case, the relevant question under *Blue* is not whether Mr. Guevara satisfied Texas's Section 5(a)(3) standard, as this Court analyzed it. In

---

[5] As discussed, *infra*, "prima facie case" means a presentation of evidence that is adequate as a matter of law to withstand a directed verdict. *See* George Herlitz, *The Meaning of the Term Prima Facie*, 55 La. L. Rev. 391, 394 (1994). In determining whether a directed verdict should issue, the evidence must be considered in the light and with all reasonable inferences most favorable to the party who has the burden of production. *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 696 (1962) (emphasis supplied); *Great W. Directories v. Southwestern Bell Tel. Co.*, 63 F.3d 1378, 1384 (5th Cir. 1995).

other words, the issue under *Blue* is *not* whether the prisoner satisfies the *state* rule of decision. Rather, the question is whether a prisoner makes a *prima facie* case *sufficient under the due process clause* to have constitutionally entitled him to "the opportunity to develop and be heard on his claim" before the state court adjudicates it on the merits. *Blue*, while recognizing that the TCCA applied a standard requiring Blue to make a threshold showing of MR by clear and convincing evidence, nevertheless did not treat the state rule as governing the federal due process question. This Court legally erred when it analyzed whether Mr. Guevara satisfied the state statutory rule, rather than whether he made a sufficient showing under the circumstances of his case to entitle him to a hearing under the due process clause.

### B. Notwithstanding that It Erroneously Used the State Rule of Decision, the Court Improperly Conducted the *Prima Facie* Analysis.

When conducting its analysis of whether Mr. Guevara made a *prima facie* showing of MR before the state court, this Court weighed the evidence and resolved many questions of fact against Mr. Guevara. In determining that Mr. Guevara had not presented a *prima facie* claim for *Atkins* relief to the state court, this Court determined that the expert opinion proffered by Mr. Guevara that he had MR could not support an MR finding because the opinion was not credible. Docket Entry 48 at 14-15, 17-19. This Court also determined that the underlying evidence Mr. Guevara proffered in support of a finding of significant limitations in intellectual functioning could not support a finding of MR because he relied on one test that was "marked by inconsistency in scoring" and another test that "is not a valid measure of general intelligence and resulted in a score inconsistent with a mental retardation diagnosis." Docket Entry 48 at 15. Finally, it determined that the underlying evidence Mr. Guevara proffered in support of a finding of significant limitations in adaptive functioning could not support a finding of MR because other information was in tension with it. Docket Entry 48 at 19-20 (relying on prosecutor's

findings adopted by the state trial court that Mr. Guevara's brother "answered . . . negatively" when asked by trial counsel whether Mr. Guevara was mentally retarded, that Mr. Guevara had the capacity to communicate with his counsel, that Mr. Guevara "made efforts" to guide defense strategy, and that Mr. Guevara had the capacity to send unsophisticated and simple letters). In sum, the Court concluded that Mr. Guevara had not made a *prima facie Atkins* claim because the evidence, in the Court's view, "was tentative and inconsistent with other information in the record."[6] Docket Entry 48 at 20.

Even in light of the state decision rule, this Court's analysis was legally flawed. A "prima facie case" merely means having presented enough evidence to withstand a motion for directed verdict. *See* George Herlitz, *The Meaning of the Term Prima Facie*, 55 La. L. Rev. 391, 394 (1994). *See also* Black's Law Dict. 1310 (9th ed. 2009) (a "prima facie case" is "[a] party's production of enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor"); *Virginia v. Black*, 538 U.S. 343, 369 (2003) ("Typically, 'prima facie evidence' is defined as: 'Such evidence as, in the judgment of the law, is sufficient to establish a given fact . . . and which if not rebutted or contradicted, will remain sufficient. [Such evidence], if unexplained or uncontradicted, is sufficient to sustain a judgment in favor of the issue which it

---

[6] Mr. Guevara disputes this Court's conclusions. Dr. Llorente's affidavit does not tentatively conclude that Mr. Guevara is a person with MR, but definitively concludes that Mr. Guevara has MR. Much of the evidence relied upon by the Court as "inconsistent" with a finding of mental retardation is faithful more to a stereotype of MR than to the science of MR. Moreover, these determinations were made without access to expert explication on the subject. Finally, the Court's reliance on Mr. Guevara's brother assessment of Mr. Guevara's functioning was unreasonable. Effectively, this Court resolved a disputed fact issue by finding Mr. Guevara's brother, an auto body repairman by trade, to be a more credible MR expert than Dr. Antolin Llorente, a licensed neuropsychologist—a finding that Mt. Washington Pediatric Hospital, for which Dr. Llorente works as the director of its Pediatric Neuropsychology program assessing, *inter alia*, mentally retarded children, and the University of Maryland School of Medicine, where Dr. Llorente is a Clinical Associate Professor of Pediatrics, would undoubtedly be surprised to learn.

supports, but [it] may be contradicted by other evidence.') (quoting Black's Law Dict. 1190 (6th ed.1990)); *id.* (referring to this understanding of "prima facie" as "canonical"); *Ex parte Williams*, 2003 WL 1787634, at *1 (Tex. Crim. App. 2003) (Cochran, J., concurring) (unpublished) ("prima facie" case is a showing of sufficient evidence to withstand a directed verdict or a "no evidence" summary judgment motion).

The analysis requires the Court to determine not whether Mr. Guevara has presented sufficient evidence at this stage such that this Court would conclude that he is a person with MR, but rather whether he presented sufficient evidence from which a reasonable fact-finder *could* infer that he is a person with mental retardation. In conducting a determination of whether a *prima facie* case has been made, a federal court must view the evidence presented in the light most favorable to the party who has the burden of production "and to give it the benefit of ***all*** inferences which the evidence fairly supports, ***even though contrary inferences might reasonably be drawn***." *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 696 (1962) (emphasis supplied); *Great W. Directories v. Southwestern Bell Tel. Co.*, 63 F.3d 1378, 1384 (5th Cir. 1995).

Mr. Guevara supported his *Atkins* claim in state court with evidence—viewed in its most favorable light and given the advantage of every fair and reasonable inference that it justifies—from which a reasonable fact-finder could infer that Mr. Guevara is a person with MR. This Court's parsing of Mr. Guevara's evidence and its reliance on other evidence in the state court record that was purportedly "inconsistent" with a finding of MR failed to give Mr. Guevara's evidence the benefit of all inferences it fairly supports. In short, whether there is "inconsistent" evidence in the record has no bearing on whether a *prima facie* case was made to the state court in the pleading phase of proceedings, because, first, some of the evidence relied upon was not

even put forward by Mr. Guevara but by the State as rebuttal evidence on an entirely different claim, and, second, the possibility of contrary inferences from the evidence are irrelevant to a proper analysis.

Rather than conduct a proper *prima facie* analysis to determine whether Section 2254(d) was satisfied by due process violations in the state court per *Blue*, the Court effectively adjudicated the merits of Mr. Guevara's MR claim. This merits ruling, however, does not comport with *Blue*, which requires the district court to hold a hearing before resolving disputed fact issues and adjudicating the merits of Mr. Guevara's *Atkins* claim under the circumstances of this case. Accordingly, the Court should alter or amend its judgment to conduct a proper analysis of whether Mr. Guevara presented a *prima facie* case to the state court, find that a *prima facie* *Atkins* claim was made to the state court, and hold an evidentiary hearing on whether Mr. Guevara is a person with a mental retardation. *See Blue*, 665 F.3d at 656-57.

## III. THE COURT LEGALLY ERRED IN DISPOSING OF MR. GUEVARA'S *STRICKLAND* CLAIM RELATED TO TRIAL COUNSEL'S UNREASONABLE INVESTIGATION.

In disposing of Mr. Guevara's *Strickland* claim related to trial counsel's unreasonable investigation, this Court conflated the issues of whether Mr. Guevara's *Strickland* claim was meritorious with whether the Court's power to grant relief was proscribed by 28 U.S.C. § 2254(d). *See* Docket Entry 36 at 22-38.

### A. A Federal Court, Deciding its Power to Grant Relief under 28 U.S.C. § 2254(d), Is Not Prohibited from Considering—and Is, in Fact, Required to Consider—Unreasonable Mistakes of Law and Fact in the State Court's Reasoning.

1. 28 U.S.C. § 2254(d) is not a standard for assessing the merits of a claim; it is a limitation on relief that once satisfied—like the exhaustion requirement—is irrelevant to this Court's consideration of Mr. Guevara's claim.

A federal court's authority to issue a writ of habeas corpus is derived from 28 U.S.C. § 2241. Section 2254, entitled "State custody; remedies in Federal Courts," governs the authority of federal courts to provide a remedy for a prisoner unconstitutionally restrained by a state court judgment. Before 1996, Section 2254 contained only two limitations on a federal court's power to grant a remedy. Section 2254(a) limited the scope of remediable claims: "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court *only* on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (emphasis supplied). Section 2254(b), the exhaustion requirement, prohibited federal courts from granting relief on an unexhausted claim unless certain conditions were met.[7]

In 1996, Congress enacted AEDPA. AEDPA left intact the core habeas requirement that a state prisoner prove that his confinement violates the laws of the United States; but proving illegal confinement and satisfying the exhaustion requirement would no longer be enough to secure a remedy. AEDPA's also created a new Section 2254(d), which "place[d] a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court."[8] *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

Understanding the function of Section 2254(d) in habeas corpus cases is critical because while AEDPA "[l]imit[ed] § 2254(d)(1) review to the state-court record," *Cullen v. Pinholster*, 131 S. Ct. 1388, 1399 (2011), it did *not* limit *all federal habeas corpus review* to the state court

_____

[7] Section 2254(d) instructed federal courts to defer to state court fact-findings unless certain conditions were met. This provision, while constraining a federal court's fact-finding, did not limit the federal court's power to grant a remedy.

[8] AEDPA retained a modified version of the old Section 2254(d) but moved this modified provision to Section 2254(e). Public Law 104–132 § 104 (2).

record. If a prisoner satisfies one of the two subsections of Section 2254(d), then a federal court simply decides the claim on the merits, through whatever procedures it would ordinarily use to resolve it. The newly-enacted Section 2254(d) is sometimes confused with a standard of review applicable to the merits of a constitutional claim. It is not. The provision is an additional limitation on a federal court's authority to *provide a remedy* for a constitutional violation. *Pinholster* unambiguously explained Section 2254(d) in these terms:

> As amended by AEDPA, 28 U.S.C. § 2254 *sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner.* Section 2254(a) permits a federal court to entertain only those applications alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." Sections 2254(b) and (c) provide that a federal court may not grant such applications unless, with certain exceptions, the applicant has exhausted state remedies.
>
> If an application includes a claim that has been "adjudicated on the merits in State court proceedings," § 2254(d), *an additional restriction applies*.

*Id.* at 1398 (emphasis supplied).

Section 2254(d) speaks not in terms of when constitutional error may be found, but of the circumstances under which a remedy for constitutional error may be granted. Where Section 2254(d) applies, it operates as a bar to relief on a claim even in those cases in which the court believes confinement is unlawful. *Cobb v. Thaler*, 682 F.3d 364, 375 (AEDPA "limit[s] the availability of a remedy ***even for aggrieved individuals who may have legitimate federal constitutional claims***" (emphasis supplied)); *Green v. French,* 143 F.3d 865, 875 (4th Cir. 1998) ("Under the AEDPA, we are free, if we choose, to decide whether a habeas petitioner's conviction and sentence violate any constitutional rights. Section 2254(d) only places an additional restriction upon the scope of the habeas remedy in certain circumstances").

The Section 2254(d) restriction on relief was not intended to be—and by its own terms is not—coextensive with the affirmative grant of power to remedy unlawful confinement under

Section 2254(a). Each provision performs an independent function, and both must be satisfied before relief can be granted. *See Fry v. Pliler*, 551 U.S. 112, 119 (2007) (Section 2254(d) "sets forth a precondition to the grant of habeas relief . . . not an entitlement to it"). Structurally, Section 2254(d) serves the function of a qualified *res judicata* provision. *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) ("[I]f the state court denies the claim on the merits, ***the claim is barred in federal court*** unless one of the exceptions to § 2254(d) set out in §§ 2254(d)(1) and (2) applies" (emphasis supplied)); *see also Schlup v. Delo*, 513 U.S. 298, 318-19 (describing the "net result of th[e] congressional and judicial action" that limits consideration of habeas corpus claims as the adoption of a "qualified application of the doctrine of res judicata" in habeas corpus proceedings) (quoting *McCleskey v. Zant*, 499 U.S. 467, 486 (1991)).

If a federal court reviewing a claim adjudicated by the state court on the merits determines that the state court decision meets one of the two exceptions in the Section 2254(d) subsections, Section 2254(d) has no further applicability to the court's review of the habeas petition. Section 2254(d) does not govern the determination of whether the petitioner has proven a constitutional violation: "When a state court's adjudication of a claim is dependent on an antecedent unreasonable application of federal law, the requirement set forth in Section 2254(d)(1) is satisfied. A federal court must then resolve the claim without the deference AEDPA otherwise requires."[9] *Panetti*, 551 U.S. at 953. *See also Salts v. Epps*, 676 F.3d 468, 480 (5th Cir. 2012) (petitioners who have demonstrated that state court adjudication of claim met one

---

[9] Once a petitioner satisfies Section 2254(d), or in those cases in which it does not apply, he may adduce—and the federal court may consider—additional evidence in support of his claims subject only to the restrictions in Sections 2254(b)–(c) and (e). *Pinholster*, 131 S. Ct. at 1401 ("Section 2254(e)(2) continues to have force where § 2254(d)(1) does not bar federal habeas relief."); *Morris v. Thaler*, 2011 WL 1886096, slip op. at *9 n.1 (5th Cir. 2011) (unpublished) (an evidentiary hearing is permissible, and appropriate, after determining that Section 2254(d)(1) is satisfied).

of the two exceptions in Section 2254(d) "may obtain relief if they can show, on de novo review, that they are 'in custody in violation of the Constitution or laws or treaties of the United States'").

Thus, a habeas petitioner must show (1) satisfaction of one of Section 2254(d)'s exceptions, when applicable, to avoid claim preclusion; *and* (2) unlawful custody to be granted habeas relief.

> **2.     Where a state court adjudication of a federal claim is expressed in a reasoned decision, the two subsections of Section 2254(d) require critical scrutiny of the fact-finding and legal reasoning upon which the reasoned state court decision is based.**

Section 2254(d)'s test for claim preclusion is a discrete legal inquiry that relies on three criteria as proxies to judge the general reliability of a state court adjudication. Section 2254(d) directs a federal court conducting a 2254(d) analysis to scrutinize reasoned state court decisions to determine whether they (1) involve an unreasonable application of clearly established federal law; (2) were contrary to clearly established federal law; or (3) were based on an unreasonable determination of facts in light of the state court record. 28 U.S.C. § 2254(d)(1)-(2). If the federal court detects any one of these flaws, then review of the constitutional claim by the federal court is not precluded and the court may grant relief on it *if* it ***further*** determines, based on its independent review of the evidence before it, that the merits of the constitutional claim have been proved.

Accordingly, the inquiry under Section 2254(d) and the determination of whether the confinement is unlawful are completely separate analyses. The former inquires into the reliability of the state court adjudication and the latter inquires into the legality of the petitioner's confinement. Because the potential result of a Section 2254(d) analysis is absolute deference

resulting effectively in claim preclusion, it is imperative that the federal court critically scrutinize the state court adjudication's reliability.

In *Neal v. Puckett*, the Fifth Circuit, sitting *en banc*, held that a federal habeas court is prohibited by Section 2254(d) from reviewing the written opinion explaining a state court decision. 286 F.3d 230, 246 (5th Cir. 2002). *But see Salts*, 676 F.3d at 479-80 (*Neal's* injunction applies only to assessments of whether a state court decision involved an unreasonable application of law, not whether it is contrary to federal law). Rather, the Court held "in the absence of clear guidance from the Supreme Court" that the "focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached." *Id*.

Although the Fifth Circuit has continued to apply *Neal*, it has been modified or abrogated by Supreme Court decisions issued subsequent to it that review the written state court opinion when conducting a Section 2254(d)(1) analysis. Six months after the Fifth Circuit decided *Neal*, "clear guidance" was received from the Supreme Court in *Early v. Packer*, 537 U.S. 3 (2002). *Packer* abrogated *Neal* when the Supreme Court held that the circumstance of contrariness contained in Section 2254(d)(1) does not exist "so long as **neither the reasoning** nor the result of the state-court decision contradicts [Supreme Court cases]." *Id*. at 8 (emphasis supplied). Subsequent Supreme Court decisions have confirmed the necessity of scrutinizing state court reasoning when conducting a Section 2254(d) analysis, regardless of the element. *See Wiggins v. Smith*, 539 U.S. 510, 527 (2003) (state court decision involved an unreasonable application of *Strickland* because the reasoned state court opinion reflected it did not conduct an assessment of whether trial counsel's decision to cease investigation actually demonstrated reasonable professional judgment); *Abdul-Kabir v. Quarterman*, 550 U.S. 233, 260 (2007) (state court

14

decision involved an unreasonable application of *Penry v. Lynaugh*, 492 US 302 (1989), because the reasoned state court opinion reflected that the state court ignored an entire line of Supreme Court cases establishing the importance of allowing juries to give meaningful effect to mitigating evidence and was therefore "unsupported by either the text or the reasoning" in *Penry*); *Porter v. McCollum*, 130 S. Ct. 447, 455 (2009) (state court decision involved an unreasonable application of *Strickland* because the reasoned state court opinions reflected that the state court did not give any consideration to certain of petitioner's mitigating evidence); *Sears v. Upton*, 130 S. Ct. 3259, 3261 (2010) ("it is plain from the face of the state courts opinion that it failed to apply the correct prejudice inquiry" to evaluate a *Strickland* claim).

The Supreme Court's decision in *Richter* is not contrary, and affirms this understanding of Section 2254(d). After holding that Section 2254(d) applies even to unexplained state court denials of habeas claims, the *Richter* Court addressed how it should be applied in such circumstances. 131 S. Ct. at 780. In framing the application of Section 2254(d)(1) to the California court's unexplained decision denying relief, the Court wrote:

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, ***as here, could have supported***, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that *those* arguments or theories are inconsistent with the holding in a prior decision of this Court.

131 S. Ct. at 786 (emphasis supplied). The "as here, could have supported" language refers to cases, like *Richter*, in which there is no reasoned opinion by the state court explaining the denial of habeas relief. The Court was clear, however, that federal courts reviewing a reasoned state court decision "must determine what arguments or theories supported . . . the state court's decision" and then assess whether "those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *See Salts*, 676 F.3d at 480 n.46 (*Richter* hypothetical

standard inapplicable because the state court provided its reason); *Sussman v. Jenkins*, 642 F.3d 532, 533 (7th Cir. 2011) ("*Harrington* is inapplicable to the present case" because "*Harrington* addresses the situation in which a state-court decision 'is unaccompanied by an explanation.'"); *Johnson v. Secretary, DOC*, 643 F.3d 907, 930 n.9 (11th Cir. 2011). The Court should accordingly recognize *Neal's* abrogation.

*Neal* was also premised on faulty reasoning. One reason the *Neal* Court rejected an interpretation of Section 2254(d) requiring scrutiny of the state court's reasoning is because the Court would "not interpret AEDPA in such a way that would require a federal habeas court to order a new sentencing hearing solely because it finds the state court's written opinion unsatisfactory." *Neal*, 286 F.3d at 246. As explained above, however—and has since been recognized by the Fifth Circuit, *Salts*, 676 F.3d at 480—a finding that Section 2254(d) has been satisfied in a case does ***not*** require a federal court to order a new trial. Rather, the finding only means that the claim is not precluded from review by the federal court. The federal court still has to determine whether the claim raised has merit. *Id*.

The *Neal* analysis conflates merits consideration with the Section 2254(d) analysis. The AEDPA, however, does not blend these concepts. The difference matters. *See Neal*, 286 F.3d at 244 (question has "significance" to outcome). The blending of merits review and Section 2254(d) effectively requires habeas petitioners to prove the merits of their constitutional claims to a standard beyond a preponderance of the evidence—*i.e.*, by proof so strong that it would be objectively unreasonable for *any court ever* to deny them—which effectively raises the petitioner's burden of proof *with respect to unlawful confinement*. Neither Section 2254(a) nor Section 2254(d) require a habeas petitioner to meet that demanding standard.

16

Supreme Court precedent accordingly requires that a federal court conducting a Section 2254(d) inquiry scrutinize state court reasoning (where it exists) to decide whether the state court decision involves an unreasonable application of clearly established federal law; is contrary to clearly established federal law; or is based on an unreasonable determination of facts in light of the state court record. 28 U.S.C. § 2254(d)(1)–(2). This Court's analysis of whether review of Mr. Guevara's *Strickland* claim would be precluded by Section 2254(d) did not comport with this standard. Rather, the Court simply held Mr. Guevara to a higher burden of proof on his *Strickland* claim itself.

**B.      This Court's Power to Grant Relief on Mr. Guevara's *Strickland* Claim Is Not Precluded By Section 2254(d).**

**1.      The state court adjudication resulted in a decision that is contrary to and involved an unreasonable application of clearly established federal law.**

The state court's adjudication of Mr. Guevara's *Strickland* claim involved a gross misapplication of the *Strickland* deficiency standard for claims alleging that trial counsel unreasonably narrowed the scope of their sentencing investigation. The state court focused on a "failure to present" claim rather than a "failure to investigate" claim. The decision primarily analyzed whether counsel made reasonable decisions about evidentiary presentation in light of what they knew, rather than whether the investigation was itself reasonable. The state court also unreasonably applied *Strickland's* prejudice prong by discounting the bulk of the mitigation evidence presented in the proceeding and failing to engage the mitigating evidence before the court. Indeed, the state court's assessment of prejudice wholly failed to assess whether the totality of the mitigating evidence discoverable through reasonable investigation created a reasonable probability of a different outcome.

a. **The state court's analysis of the reasonableness of counsel's decision to limit the scope of their sentencing investigation unreasonably applied *Strickland*.**

It is clearly established federal law that decisions about investigative scope and evidentiary presentation can be "strategic" only to the extent they are themselves informed by reasonable investigation. *See Strickland v. Washington*, 466 U.S. 668, 690-91 (1984); *Wiggins v. Smith*, 539 U.S. 510, 526-27 (2003). Accordingly, when assessing a claim alleging that trial counsel unreasonably narrowed the scope of their investigation, the proper focus is on the reasonableness of counsel's decision not to investigate, not on the reasonableness of counsel's decisions about what evidence to present. *See Williams v. Taylor*, 529 U.S. 362, 396 (2000) (counsel's failure to introduce mitigating evidence not justified by a tactical decision to focus on Williams's voluntary confession because they were not informed by a thorough investigation of the defendant's background); *Wiggins*, 539 U.S. at 527. It is also clearly established federal law that trial counsel have a duty to conduct a ***thorough*** investigation into their capital defendant's background. *Porter v. McCollum*, 130 S. Ct. 447, 452 (2009); *Wiggins*, 539 U.S. at 522; *Williams*, 529 U.S. at 396.

A state court's application of *Strickland's* legal principles is objectively unreasonable when the court does not conduct an assessment of whether the decision **to narrow the scope of investigation** in light of the information known to counsel demonstrates reasonable professional judgment. *Wiggins*, 539 U.S. at 527 (state court's "application of *Strickland*'s governing legal principles was objectively unreasonable" because "the court did not conduct an assessment of whether the decision to cease all investigation upon obtaining [social history] records actually demonstrated reasonable professional judgment); *id.* (state court applying *Strickland* must "consider not only the quantum of evidence already known to counsel, but also whether the

18

known evidence would lead a reasonable attorney to investigate further."); *id.* at 527 (state court's assumption that "because counsel had *some* information with respect to petitioner's background . . . they were in a position to make a tactical choice not to present a mitigation defense" was an unreasonable application of *Strickland*).

Here, the state court failed to conduct an assessment of whether trial counsel's decision to narrow the scope of investigation in light of the information known to them reflected reasonable professional judgment. Instead, it assumed that because counsel purported to have spoken to Mr. Guevara and his brother about his background, they were in a position to make a tactical choice not to present a mitigation defense.[10] 2 S.H.R. 462. While the state court considered "the quantum of evidence already known to counsel" when finding that counsel's decisions not to *present* particular witnesses and evidence was not unreasonable, it never considered "whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins*, 539 U.S. at 527. Although it concluded that "more [mitigating] information could have been found [at trial]," the state court never analyzed whether trial counsel's failure to even take the step of ***requesting*** funding to send an investigator to El Salvador and investigate Mr. Guevara's background based on their knowledge at the time constituted reasonable professional judgment. 2 S.H.R. 462.

Relevant to the reasonableness of trial counsel's investigation, the state court made only the following factual findings: (1) that Mr. Guevara informed counsel that his brother and sister lived in the Houston area, that the rest of Mr. Guevara's family lived In El Salvador, and that Mr. Guevara's family was too poor to travel to the United States, did not have visas, and that it was questionable whether the government would allow his family to leave El Salvador; (2) that trial

---

[10] None of the state court's findings about the reasonableness of trial counsel's strategic decisions was relevant to the claim before the state court that the scope of trial counsel's sentencing investigation was unreasonable.

counsel asked his investigator to locate Mr. Guevara's wife "so that she could testify for" Mr. Guevara; (3) that Mr. Guevara's wife could not be located; (4) that trial counsel's "impression" was that she was so shocked and devastated by the offense that she did want to be involved with the applicant or the trial; (5) that trial counsel spoke to Mr. Guevara's sister on the telephone; (6) that trial counsel interviewed Mr. Guevara and his brother concerning Mr. Guevara's background and childhood in El Salvador; (7) that trial counsel posed the following questions to Mr. Guevara and his brother, which they answered negatively: (a) whether the applicant was personally threatened, mistreated, or harmed by soldiers or anyone else involved in the war in El Salvador; (b) whether Mr. Guevara saw anyone raped or killed during the war; (c) whether Mr. Guevara had suffered a head injury of any kind; (d) whether the applicant had brain surgery; (e) whether the applicant showed any sign of mental retardation; (f) whether the applicant was diagnosed with mental retardation; (g) whether the applicant had been treated by a doctor, psychiatrist, or psychologist; or, (h) whether the applicant had been physically or sexually abused by a parent or anyone else; (8) that trial counsel "explored" possible mitigation evidence arising from Mr. Guevara's growing up in El Salvador during the civil war; (9) that Mr. Guevara "down played" his experiences during the war; (10) that Mr. Guevara stated that the war did not really affect him; (11) that Mr. Guevara heard of atrocities and heard gunshots, but he never saw any atrocities and was never threatened or mistreated; (12) that Mr. Guevara did not appear to be affected by the war when discussing it with counsel; (13) that Mr. Guevara did not indicate that leaving his mother in El Salvador was traumatic; (14) that the applicant stated that he left El Salvador because he wanted a better life and he wanted to send money back to his family; and

(15) that trial counsel was "logistically forced" to rely on Mr. Guevara's and his brother's pre-trial accounts of their life In El Salvador.[11]

Putting aside the potential unreasonableness of some of these factual determinations,[12] the state court in essence found that because Mr. Guevara's counsel interviewed their client, his brother, and his sister, they complied with their duty to conduct a thorough investigation into the background of their capitally charged client and did not unreasonably narrow the scope of their sentencing investigation. 2 S.H.R. 462 ("The Court finds that even though more information could have been found, trial counsel made a reasonable investigation of the applicant's background in an effort to obtain mitigation evidence . . . ."). The state court's implicit finding that trial counsel uncovered nothing in their exceedingly narrow investigation that would have caused reasonable counsel to expand the scope of investigation at all is belied, however, by the state court's finding that Mr. Guevara's trial counsel had knowledge of Mr. Guevara's family's poverty and experience in the El Salvadoran war and even had intended to present testimony about it through Mr. Guevara's brother. 2 S.H.R. 549. The state court's failure to assess whether the decision to cease all investigation after interviewing Mr. Guevara's brother and sister "actually demonstrated reasonable professional judgment" was an unreasonable application of *Strickland*.[13] *Wiggins*, 539 U.S. at 527. Because the state court decision involved an

---

[11] This finding is belied by state habeas counsel's own investigation. The state court did not bother to explain why trial counsel were "logistically forced" to do something that state habeas counsel was not. This is especially confounding given that defendants have a right to effective assistance of counsel and to a meaningful opportunity to present a defense at trial, and such rights are not afforded at all in collateral proceedings.

[12] Documentary evidence before the state court, including trial counsel's investigator's affidavit, reflected that counsel's discussions with Mr. Guevara's family members was related to investigation of the charged offense and not about Mr. Guevara's background. 1 S.H.R. 141-42.

[13] The state court also failed entirely to consider the effect that counsel's decision to delay investigation had on the scope of their investigation. Counsel's "decision" to cease investigation was principally motivated by the fact that trial was imminent. The evidence before

unreasonable application of clearly established federal law, Section 2254(d) does not bar review of Mr. Guevara's *Strickland* claim.

> **b.    The state court's exclusion of mitigating evidence from its prejudice analysis because it did not "rise to the level of *Penry*-type evidence" is contrary to *Strickland*, *Penry v. Lynaugh*, 492 U.S. 302 (1989), and *Tennard v. Dretke*, 542 U.S. 274 (2004).**

Clearly established federal law requires that, in determining prejudice on a *Strickland* claim, a reviewing court must consider the totality of the mitigating evidence presented at trial— which, here, was no evidence at all—and in the collateral proceeding. *See Williams v. Taylor*, 529 U.S. 362 (2000). Clearly established federal law also holds that mitigating evidence is any evidence that might serve as a basis for a sentence less than death.[14] *Tennard*, 542 U.S. at 285 (quoting *Lockett v. Ohio*, 438 U.S. 586, 604 (1978)); *id.* at 284 (relevant mitigating evidence is any evidence that "tends logically to prove or disprove some fact or circumstance which a fact-finder could reasonably deem to have mitigating value") (internal quotation marks omitted)).

In its assessment of prejudice, the state court excluded from its consideration proffered mitigating evidence that it erroneously determined did not "rise to the level of *Penry*-type evidence." 2 S.H.R. 460. This evidence included (1) that Mr. Guevara's mother had chicken pox during her pregnancy with Mr. Guevara; (2) that Mr. Guevara's father had a bad temper and sometimes talked loudly and threw things; (3) that Mr. Guevara contracted his mother's chicken

---

the state court reflected that counsel's sentencing investigation—to the extent there was one at all—was not initiated until *voir dire* had already begun. 1 S.H.R. 141. Counsel's dilatoriness meant they could not have expanded the scope of their investigation even if they had made an informed decision to do so.

[14] The Supreme Court made clear in *Abdul-Kabir* that *Penry* "require[s] that juries be permitted to give 'meaningful effect' to *almost all types of mitigating evidence*." *Garcia v. Quarterman*, 2007 WL 3005213, *3 (5th Cir. 2007) (emphasis supplied). Evidence of a defendant's good character, for example, is mitigating evidence that meets the "low threshold for relevance" articulated by the Supreme Court. *Tennard*, 542 U.S. at 285; *Coble v. Quarterman*, 496 F.3d 430, 444 (5th Cir. 2007).

pox and suffered diarrhea and skin problems as an infant; (4) that Mr. Guevara was over-protected by his mother; and, (5) that the applicant got along well with his siblings and was the most "humble and most lovable" of all the children. 2 S.H.R. 460-61. The state court's exclusion of this evidence from its prejudice analysis based on a discredited severity "screening test" for mitigating evidence, *Tennard*, 542 U.S. at 283-84, is contrary to *Strickland*, *Penry*, and *Tennard*. Because the state court decision is contrary to clearly established federal law, Section 2254(d) does not bar review of Mr. Guevara's *Strickland* claim.

> **c. The state court's failure to engage with the mitigating evidence and its discounting of it to inconsequential proportions unreasonably applied *Strickland*.**

Clearly established federal law requires a reviewing court to consider the totality of the evidence when assessing the prejudice of a *Strickland* claim. *Strickland*, 466 U.S. at 695-96. A state court unreasonably applies *Strickland* if, when assessing prejudice, it "fail[s] to engage with" the mitigating evidence before it. *Porter*, 130 S. Ct. at 455. A state court also unreasonably applies *Strickland* if it does "not consider or unreasonably discount[s] the mitigation evidence" before it. *Id*. at 454.

Relevant to prejudice, the state court found: (1) that the content of Dr. Richard Cervantes's affidavit related to PTSD, immigration trauma, and conditions in El Salvador during the civil war was "unpersuasive"; (2) that (a) the evidence that that Mr. Guevara's mother had chicken pox during her pregnancy with Mr. Guevara; (b) that Mr. Guevara's father had a bad temper and sometimes talked loudly and threw things; (c) that Mr. Guevara contracted his mother's chicken pox and suffered diarrhea and skin problems as an infant; (d) that Mr. Guevara was over-protected by his mother; and, (e) that the applicant got along well with his siblings and was the most "humble and most lovable" of all the children was not mitigating; (3) that the

content of Dr. Cervantes's affidavit related to Mr. Guevara's experience in El Salvador and the reasons for his leaving was "unpersuasive" because it was inconsistent with information trial counsel claimed was conveyed to him by Mr. Guevara and his brother prior to trial; (4) that the content of Dr. Cervantes's affidavit related to Mr. Guevara's dependence upon his mother, PTSD symptoms, and need for counseling to deal with PTSD and immigration stressors was "unpersuasive"; and, (5) that evidence that Mr. Guevara was a hard worker and spent time with his family, that he did not use drugs or alcohol, and that he would attend church was not "meaningful mitigation" relative to the State's aggravating evidence. 2 S.H.R. 472-73. The state court summarized the mitigating evidence it considered in its prejudice analysis as follows:

> At most, the evidence applicant says his trial counsel should have produced shows that people he knew thought he was a good worker and a family man, that a psychologist thought applicant suffered 'war trauma' but that neither applicant nor his siblings sought out or were identified as being in need of mental health treatment as a result of any such exposure, that applicant was 'overly dependent' on his mother and did not develop 'normal' peer relationships, and that applicant's gang membership was only 'peripheral' and was for the purpose of meeting females.

2. S.H.R. 473. The state court concluded that Mr. Guevara failed to show that there was a reasonable probability that the omitted evidence would have changed the outcome of the punishment phase. *Id.*

First, the state court's characterization of the evidence before it starkly demonstrates its failure to engage with the mitigation evidence presented by Mr. Guevara. Its characterization of Mr. Guevara's mitigating evidence was misleading and woefully incomplete. As this court acknowledged in its opinion, the state court did not consider in its analysis, *or even reference the existence of*, substantial mitigating information regarding Mr. Guevara's actual experiences

during the El Salvadoran war contained in the declaration submitted by Gina Vitale.[15] Moreover, it completely excluded from its consideration, on discredited legal grounds, certain evidence that it deemed insufficiently "severe." 2 S.H.R. 460. Although the court acknowledged some of the themes of the mitigating evidence Mr. Guevara proffered as discoverable through reasonable investigation, it wholly failed to engage with the depth of evidence presented to it in the record.

Second, beyond the state court's failure to engage with the totality of the evidence before it, the state court also unreasonably discounted certain mitigating evidence. The state court discounted certain expert opinion testimony relating to Mr. Guevara's mental health as "unpersuasive" because it was inconsistent with other alleged information. *See* 2 S.H.R. 461 (finding "unpersuasive" Dr. Cervantes's affidavit because its content "differs from the information" allegedly conveyed to trial counsel by Mr. Guevara and his brother); *cf. Porter*, 130 S. Ct. at 455 (it is an unreasonable application of *Strickland* for a state court to discount the effect that mitigating evidence might have on a jury because it might be impeached, because it is inconsistent with other evidence, or because it has aggravating elements). Expert testimony from Dr. Cervantes related to Mr. Guevara's dependence upon his mother, PTSD symptoms, and need for counseling to deal with PTSD and immigration stressors was also deemed "unpersuasive,"

---

[15] This court likewise committed the same error when it "limited" the "evidentiary value" of Vitale's declaration because of its "hearsay-based nature." *See* Docket Entry 36 at 24 n.18. No ruling of the state court excluded Vitale's declaration as inadmissible hearsay in the collateral proceeding. Moreover, "the fact that some of such [mitigating] evidence [proffered in collateral proceedings in support of prejudice for a *Strickland* claim] may have been 'hearsay' does not necessarily undermine its value—or its admissibility—for penalty phase purposes." *Sears v. Upton*, 130 S. Ct. 3259, 3263 (2010). *See also Wiggins*, 539 U.S. at 536 (federal court reviewing *Strickland* claim "need not . . . make the state-law evidentiary findings that would have been at issue at sentencing"). For a *Strickland* claim in which trial counsel's failure to reasonably investigate is the alleged deficiency, the evidence in support of prejudice is a demonstration of what information would have been discoverable to trial counsel who did conduct a reasonable investigation. The evidence need not be in admissible form as long as trial counsel could have presented the same information in an admissible form at trial had they been in possession of it.

but without any reasons given by the court. 2 S.H.R. 461. Finally, the state court unreasonably discounted mitigating expert testimony because it did not "rise to the level of *Penry*-type evidence." 2 S.H.R. 460.

This discounting of the mitigating evidence in the state court record was an unreasonable application of *Strickland*. *Porter*, 130 S. Ct. at 455. Because the state court decision involved an unreasonable application of clearly established federal law, Section 2254(d) does not bar review of Mr. Guevara's *Strickland* claim.

## CONCLUSION

For the foregoing reasons, the Court should alter or amend its judgment.

Respectfully submitted,


/s/ Laura Ferry

Thomas S. Berg
Texas Bar No. 02189200
600 Travis Street, Suite 1900
Houston, TX  77208-1508
Tel. (713) 236-1900
Fax (713) 228-0321

Laura Ferry
Texas Bar No. 24069715
TEXAS DEFENDER SERVICE
510 S. Congress Ave., Suite 403
Austin, TX  78704
Tel. (512) 320-8300
Fax (512) 477-2153

## CERTIFICATE OF CONFERENCE

I hereby certify that I have conferred with counsel for Respondent, Katherine D. Hayes, and that she is opposed to this motion.

/s/ Laura Ferry
Laura Ferry

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2012, I electronically filed the foregoing motion with the Clerk of the Court for the U.S. District Court, Southern District of Texas.  The ECF system sent a "Notice of Electronic Filing" to counsel for Respondent:

KATHERINE D. HAYES
Assistant Attorney General
P.O. Box 12548, Capitol Station
Austin, TX  78711
Katherine.hayes@oag.state.tx.us

/s/ Laura Ferry
Laura Ferry