# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **GILMAR ALEXANDER GUEVARA,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:08-cv-01604** |
| | § | ***CAPITAL CASE*** |
| **WILLIAM STEPHENS, Director,** | § | |
| **Correctional Institutions Division,** | § | |
| **Texas Department of Criminal** | § | |
| **Justice,** | § | |
| | § | |
| **Respondent.** | § | |
| | § | |

_____

***CAPITAL CASE***
**MOTION UNDER FED. R. CIV. P. 60(b)(6) TO REOPEN JUDGMENT AND REVERSE ORDER FINDING THAT 28 U.S.C. § 2254(d) PRECLUDES RELIEF**
_____

Thomas S. Berg
State Bar No. 02189200
4306 Yoakum Blvd., Suite 400
Houston, TX 70006
713.236.1900
tomberg@msblawyers.com

Lee B. Kovarsky
State Bar No. 240153310
TEXAS DEFENDER SERVICE
500 West Baltimore, Room 436
Baltimore, MD 21201
434.466.8257
lkovarsky@texasdefender.org

*Counsel to Petitioner Gilmar Guevara*

1

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ..................................................................................1

**STATEMENT OF PERTINENT FACTS AND PRIOR PROCEEDINGS** ..........................2

**ARGUMENT** ...........................................................................................................8

**I.     MR. GUEVARA IS ENTTILED TO RELIEF UNDER RULE 60(b)(6).** ..................9

      **A.     Extraordinary Circumstances Warrant Reopening this Court's Judgment.** ....................................................................................10

            **1.     There is a High Risk of an Eighth Amendment Violation.** .........................10
            **2.     The Supreme Court's Recent Decision in *Brumfield* Indicates that this Court's Judgment Was in Error.** ................................12

      **B.     This Motion Has Been Made In a Reasonable Time.** .......................................20

**II.    2254(d) IS A RELITIGATION BAR, AND A RULE 60(b)(6) CHALLENGE SHOULD NOT BE TREATED AS A SUCCESSIVE HABEAS PETITION.** ...........21

      **A.     A Motion Challenging a Court's Ruling on a Feature of the Habeas Remedy is Not a Second or Successive Petition.** .................................21

      **B.     Mr. Guevara's Rule 60(b) Motion is Not a Second or Successive Petition Because it Challenges the Court's Application of § 2254(d).** ............22

**CONCLUSION AND PRAYER FOR RELIEF** ...................................................25

## TABLE OF AUTHORITIES

**Cases**

*Allen v. McCurry*, 449 U.S. 90 (1980)................................................................23

*Atkins v. Virginia*, 536 U.S. 304 (2002) ......................................................3, 11, 12

*Balentine v. Thaler*, 626 F.3d 842 (5th Cir. 2010) .....................................9, 22

*Brumfield v. Cain*, 135 S. Ct. 2269 (2015)...........................................*passim*

*Caldwell v. Mississippi*, 472 U.S. 320 (1985) .......................................10

*Ex parte Blue*, 230 S.W.3d 151 (Tex. Crim. App. 2007) ............................5

*Ex Parte Briseño* 135 S.W.3d 1 (Tex. Crim. App. 2004)..........................13

*Ex parte Guevara*, Nos. WR-63,926-01, WR-63,926-02, 2007 WL 1493152 (Tex. Crim. App. May 23, 2007) .....................................................................1, 5

*Glebe v. Frost*, 135 S. Ct. 429 (2014)...................................................23

*Gonzalez v. Crosby*, 545 U.S. 524, 528-29 (2005)...........................*passim*

*Guevara v. State*, 97 S.W.3d 579 (Tex. Crim. App. 2003) ........................3

*Guevara v. Stephens*, 135 S. Ct. 1892 (2015)......................................8, 20

*Hall v. Florida*, 134 S. Ct. 1986 (2014) ..............................................11, 15

*Harrington v. Richter*, 562 U.S. 86 (2011).............................................23

*Jones v. Quarterman*, No. 4:05-CV-638-Y, 2008 WL 4166850 (N.D. Tex. Sept. 10, 2008) .......12

*Klapprott v. United States*, 335 U.S. 601, 613 (1949)...................................9

*Lafler v. Cooper*, 132 S. Ct. 1376 (2012) ...............................................24

*Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988) ..........................9

*Lopez v. Smith*, 135 S. Ct. 1 (2014) .....................................................23

*Medellin v. Dretke*, 544 U.S. 660 (2005)............................................24, 25

*Panetti v. Quarterman*, 551 U.S. 930 (2007) ...........................................24

*Ruiz v. Quarterman*, 504 F.3d 523 (5th Cir. 2007) ...............................................11, 22

*Salts v. Epps*, 676 F. 3d 468 (5th Cir. 2012)..................................................................24

*Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396 (5th Cir. 1981) ..................................10, 12

*Slack v. McDaniel*, 529 U.S.  473 (2000) ......................................................................24

**Statutes**

28 U.S.C. § 2244(b)....................................................................................................21, 22

28 U.S.C. § 2244(b)....................................................................................................21, 24

28 U.S.C. § 2254(d)...................................................................................................*passim*

**Other Authorities**

American Association on Intellectual and Developmental Disabilities (AAIDD), INTELLECTUAL DISABILITY: DEFINITION, CLASSIFICATION, AND SYSTEMS OF SUPPORTS 5 (11th ed. 2010) ..3, 16

**Rules**

FED. R. CIV. P. 60(b)(6) ................................................................................................1, 9

FED. R. CIV. P. 60(c)(1) ...................................................................................................9

**MOTION UNDER FED. R. CIV. P. 60(b)(6) TO REOPEN JUDGMENT AND REVERSE ORDER FINDING THAT 28 U.S.C. § 2254(d) PRECLUDES RELIEF**

Petitioner Gilmar Alexander Guevara hereby moves this Court, under FED. R. CIV. P. 60(b)(6), to reopen its judgment, to remedy a defect in the integrity of the proceeding, and to reverse its prior determination that 28 U.S.C. § 2254(d) precludes relief. Based on extraordinary circumstances, including the Supreme Court's recent decision in *Brumfield v. Cain*, 135 S. Ct. 2269 (2015), Mr. Guevara is entitled to a finding that § 2254(d) does not preclude relief.

<u>**PRELIMINARY STATEMENT**</u>

Mr. Guevara is a capitally sentenced Texas inmate who presented Texas courts with a claim that his intellectual disability ("ID") rendered him ineligible for execution under *Atkins v. Virginia*, 536 U.S. 304 (2002). The Texas Court of Criminal Appeals ("TCCA") dismissed his *Atkins* claim on the pleadings, holding that he had not made a sufficient showing of ID to entitle him to an evidentiary hearing. *Ex parte Guevara*, Nos. WR-63,926-01, WR-63,926-02, 2007 WL 1493152 (Tex. Crim. App. May 23, 2007). In federal court, Mr. Guevara argued that the relitigation bar in 28 U.S.C. § 2254(d) did not preclude relief because the TCCA unreasonably decided his claim by adjudicating it on the merits, without a hearing. This Court held that Mr. Guevara satisfied no exception to § 2254(d), which therefore precluded relief.

Mr. Guevara diligently pressed the argument that the state court's adjudication of his *Atkins* claim was unreasonable. He argued that, as a result, he was entitled to plenary federal consideration of the claim, unencumbered by § 2254(d)'s restriction on the habeas remedy. He made that argument in a timely motion for relief under Fed. R. Civ. P. 59(e), *see* Motion to Alter or Amend Judgment at 2-9, *Guevara v. Thaler*, No. 4:08-cv-01604 (S.D. Tex. Oct. 23, 2012) (No. 50); in his Application for a Certificate of Appealability ("COA") to the U.S. Court of Appeals for the Fifth Circuit, *see* Amended Application for a Certificate of Appealability and

Brief in Support Thereof at 61-75, *Guevara v. Stephens*, No. 13-70003 (5th Cir. July 11, 2013); in his Fifth Circuit Petition for Rehearing En Banc, *see* Petition for Rehearing *En Banc* at 10-15, *Guevara v. Stephens*, No. 13-70003 (5th Cir. Sept. 2, 2014); and in his certiorari petition to the United States Supreme Court, *see* Brief of Petitioner-Appellant at 33-37, *Guevara v. Stephens*, No. 14-7676 (S. Ct. Dec. 22, 2014).

On June 18, 2015, the Supreme Court decided *Brumfield v. Cain*, 135 S. Ct. 2269 (2015), validating Mr. Guevara's position that the state court's adjudication of his claim, in the absence of a hearing, was unreasonable under § 2254(d). *See* 135 S. Ct. at 2281-82. *Brumfield* held that a state court unreasonably decides an *Atkins* claim if, when confronted with "sufficient evidence to raise a question as to" the claim's merit, it denies relief without providing an opportunity to be heard. *Id*. at 2279. *Brumfield* affirmed that, by imposing § 2254(d), this Court misunderstood what state courts must do when considering the type of evidence Mr. Guevara presented.

### STATEMENT OF PERTINENT FACTS AND PRIOR PROCEEDINGS

Mr. Guevara was arrested on June 10, 2000. A jury found him guilty of capital murder on May 30, 2001. CR 143; 16 TR 31.[1] When Mr. Guevara was sentenced, the Supreme Court had not yet announced that the Eighth Amendment categorically prohibits the execution of defendants with ID. After the State completed its sentencing case, trial counsel rested without presenting any evidence. 2 PCR 364-67; Memorandum and Order at 31, *Guevara v. Thaler*, No. 4:08-cv-01604 (S.D. Tex. Sept. 23, 2011) (No. 36). Having been presented with no information about Mr. Guevara's background and mental health, the jury quickly rejected the proposition that mitigation precluded a capital sentence and concluded that Mr. Guevara was a continuing threat to society. CR 138-39. The TCCA affirmed the conviction and sentence on January 15, 2003.

---

[1] The clerk's record from Mr. Guevara's state post-conviction proceedings will be cited as "[volume] PCR [page number]." The clerk's record from Mr. Guevara's trial will be cited as "CR [page number]." The reporter's record from trial will be cited as "[volume] TR [page number]."

*Guevara v. State*, 97 S.W.3d 579 (Tex. Crim. App. 2003).

**A.      State Post-Conviction Proceedings**

On June 22, 2001, the state court appointed Robert Morrow to represent Mr. Guevara in state post-conviction proceedings. A year later, the Supreme Court announced the categorical prohibition against executing intellectually disabled offenders. *See Atkins v. Virginia*, 536 U.S. 304, 321 (2002). Morrow ultimately filed two different state post-conviction applications. He filed the first on December 23, 2002, and it contained no *Atkins* claim. He filed the *Atkins* claim in a state successor application, on January 12, 2006.

In support of the *Atkins* claim, Mr. Guevara set forth evidence supporting each of the three clinical ID prongs: (1) significant limitations in intellectual functioning, (2) significant limitations in adaptive behavior, and (3) onset prior to age eighteen. *See* American Association on Intellectual and Developmental Disabilities (AAIDD), INTELLECTUAL DISABILITY: DEFINITION, CLASSIFICATION, AND SYSTEMS OF SUPPORTS 5 (11th ed. 2010) (hereinafter "INTELLECTUAL DISABILITY"). The report of mitigation specialist Gina Vitale ("Vitale Report") was offered in support of the ID allegations in the second state post-conviction application. The Vitale Report disclosed that Mr. Guevara was extremely reserved and timid as a child growing up in El Salvador, was non-communicative, and did not want to play. *See* Dkt. No. 1-3, Ex. B to Petition for Writ of Habeas Corpus, Vitale Report at 3. A teacher reported that, "academically he wasn't so good;" family members believed that Mr. Guevara "could not learn;" and others observed that "he was a little slow," and "did not have intelligence." *Id.* at 4.

For the *Atkins* claim, Mr. Morrow retained Dr. Antolin Llorente, a neuropsychologist, to assess Mr. Guevara's neuropsychological and cognitive functioning in an attempt to "rule-out" ID. *See* Dkt. Nos. 1-2 & 1-3, Ex. A to Petition for Writ of Habeas Corpus, Llorente Aff. at 1

3

(hereinafter "Llorente Aff."). Dr. Llorente administered (in Spanish) a comprehensive ID assessment that included twenty-one procedures and tests to measure Mr. Guevara's cognitive abilities, including the Woodcock-Muñoz Pruebas de Habilidad Cognitiva-Revisada (WMPHC-R), a test of intellectual disability. *See id.* at 5. On this assessment, Mr. Guevara received a Broad Cognitive Ability score of 60 (.4th percentile), which placed him in the "very poor" or "mentally deficient range of intellectual skills." *Id.* at 6. Dr. Llorente concluded that, based on this comprehensive measure of intellectual ability, Mr. Guevara's scores were consistent with clinical ID criteria. *See id.* at 13.   Even though Morrow had contacted Dr. Llorente to rule out ID, Dr. Llorente actually concluded that Mr. Guevara was intellectually disabled:

> Mr. Guevara's impaired intellect, in conjunction with his history of adaptive delays, and the fact that his impairment had an early onset (before the age of 18 years), does not permit a rule-out of [ID]. In fact, *it is my opinion*, *with a reasonable degree of psychological certainty*, *that Mr. Guevara suffers from [ID]* and this impression is based on established definitions of [ID] set forth by the AAMR and the APA (DSM-IV-TR).

*Id.* at 10 (emphasis added).

Dr. Llorente supported his belief that Mr. Guevara had ID with "reasonable degree of psychological certainty" by reference to Mr. Guevara's extensive adaptive deficits, and the fact that his impairments had an early onset (before age eighteen). *Id.* at 10, 15-16. Those knowing him prior to age eighteen identified adaptive deficits across all cognitive, practical, and social domains. For example, his developmental milestones were late: he did not start walking until age two; did not start talking until age four; and could not tie his shoes at the age of seven. *See id.* at 15. As a young child, "he did not play," either with other children or alone. *Id.* at 3.  He repeated the third grade in an educational system where almost all students were "socially" promoted through the fourth grade, and he dropped out of school because he could not learn. *See id.* at 15. He had problems following simple directions, such as not being able to retrieve the items

requested by his parents from the grocery store, even when there were only one or two items to buy. *See id.* at 3, 15. Though his father tried to teach him, Mr. Guevara could not learn simple tasks that other children his age were expected to perform, such as drying and grinding corn. *See id.* at 3. Those employing him when he was a teenager reported that he was unable to learn simple mechanical tasks, could not follow basic instructions, and was confused and forgetful. *See id.* at 15. As with groceries, he could not identify and retrieve the appropriate tools. *See id.* at 3. He repeatedly performed simple mechanical tasks incorrectly, after his employer's multiple attempts to explain what was required. *See id.* at 4. Mr. Guevara had numerous risk factors for ID, including that he experienced a lack of oxygen to the brain at birth (biomedical); was underweight and suffered from neglect and malnutrition (behavioral, biomedical); received little to no sensory stimulation (social); and experienced numerous head injuries before age eighteen (biomedical). *See id.* at 15-16. His "impaired intellect" was further "exacerbated by . . . exposure to severe violence [as a child] caused by the civil war." *Id.* at 11.

On January 17, 2006, and without holding a hearing, the state trial court forwarded the second state application to the TCCA, recommending that it be treated under the Texas successive-application provision. The TCCA issued a consolidated order disposing of both state post-conviction applications on May 23, 2007. *Ex parte Guevara*, Nos. WR-63,926-01, WR-63,926-02, 2007 WL 1493152 (Tex. Crim. App. May 23, 2007). Citing *Ex parte Blue*, 230 S.W.3d 151 (Tex. Crim. App. 2007), the TCCA held that "the application [containing the ID allegations] fail[ed] to meet one of the exceptions provided for in [Article 11.071 § 5]" that would have permitted a hearing before decision. *Guevara*, 2007 WL 1493152, at *1. Because *Blue* requires the state court to consider whether an *Atkins* claim under the United States Constitution has been alleged, this Court concluded that the state court disposition was an

adjudication on the merits of the claim. *See* Memorandum and Order at 9, *Guevara v. Thaler*, No. 4:08-cv-01604 (S.D. Tex. Sept. 25, 2012) (No. 48). The TCCA, however, denied Mr. Guevara any further opportunity to be heard on his *Atkins* claim before denying it.

## B.    Federal Habeas Proceedings

In this Court, Mr. Guevara raised a number of federal habeas claims, including the *Atkins* claim. *See* Petition for Writ of Habeas Corpus at 11-23, *Guevara v. Thaler*, No. 4:08-cv-01604 (S.D. Tex. May 21, 2008) (No. 1) (*Atkins* claim). Among other things, Mr. Guevara argued that the *Atkins* claim was not procedurally defaulted because there was no independent state ground, and he complained about the TCCA's failure to order a hearing upon a sufficient showing of ID. *See id.* at 11, 23; Petitioner Gilmar [Guevara]'s Brief Concerning the Interplay Between State Procedural Rules and Federal Habeas Law at 3 n.2, *Guevara v. Thaler*, No. 4:08-cv-01604 (S.D. Tex. Feb. 2, 2011) (No. 32) (explaining, per federal law, that "fundamental due process obligations" towards Mr. Guevara include "the right to a hearing during which he may present live testimony and evidence"); Amended Reply to Respondent Thaler's Answer and Motion for Summary Judgment at 20, *Guevara v. Thaler*, No. 4:08-cv-01604 (S.D. Tex. June 9, 2010) (No. 28) (arguing that state post-conviction screening procedure deprived Mr. Guevara of his federal right to a "reasonable opportunity to have his federal claim heard and determined by the state court"); *id.* at 22-25 (setting forth federal due process argument in body of the filing).

After holding that the state court adjudicated the claim on the merits—and, for that reason, that the claim was not procedurally defaulted—this Court held that 28 U.S.C. § 2254(d) precluded federal relitigation. *See* Memorandum and Order at 17, *Guevara v. Thaler*, 4:08-cv-01604 (S.D. Tex. Sept. 23, 2011) (No. 36) (procedural default holding); Memorandum and Order at 21-23, *Guevara v. Thaler*, 4:08-cv-01604 (S.D. Tex. Sept. 25, 2012) (No. 48) (§ 2254(d)

holding). This Court recognized that an inmate avoids § 2254(d) when, upon a sufficient *Atkins* showing, a state court adjudicates a claim on the merits without providing a hearing. *See* Memorandum and Order at 18, *Guevara v. Thaler*, 4:08-cv-01604 (S.D. Tex. Sept. 23, 2011) (No. 36). Before holding that § 2254(d) barred relief, therefore, this Court determined that the state courts did not err in failing to afford Mr. Guevara an opportunity to present evidence at a hearing on his *Atkins* claim.

In his post-judgment motion under Rule 59(e), Mr. Guevara argued that this Court incorrectly imposed the § 2254(d) relitigation bar, erecting too high a standard in determining that the state record contained insufficient evidence to entitle him to an evidentiary hearing. *See* Motion to Alter or Amend Judgment at 1-9, *Guevara v. Thaler*, No. 4:08-cv-01604 (S.D. Tex. Oct. 23, 2012) (No. 50). Specifically, he argued that this Court had misapplied § 2254(d) because: (1) it used a "clear and convincing" evidence rule when it was only supposed to screen for prima facie evidence under federal law, and (2) in conducting its analysis, it inappropriately weighed evidence and construed inferences against him. *See id*. This Court ultimately denied post-judgment relief and denied COA on all *Atkins* issues. *See* Order, *Guevara v. Thaler*, No. 4:08-cv-01604 (S.D. Tex. Dec. 19, 2012) (No. 56); Final Judgment, *Guevara v. Thaler*, No. 4:08-cv-01604 (S.D. Tex. Sept. 25, 2012) (No. 49).

When Mr. Guevara pressed his *Atkins* claim in a COA Application to the Fifth Circuit on July 11, 2013, he sought relief on the ground that this Court misapplied the § 2254(d) relitigation bar. He again argued that the TCCA committed a due process violation by failing to hold a hearing before adjudicating the merit of his *Atkins* claim. *See* Amended Application for a Certificate of Appealability and Brief in Support Thereof at 63-75, *Guevara v. Stephens*, No. 13-70003 (5th Cir. July 11, 2013). The Fifth Circuit denied COA on the *Atkins* claim. It held that,

when the TCCA adjudicated the merits of the *Atkins* claim without a hearing, it did not violate clearly established federal law. *See* Order at 12-15, *Guevara v. Stephens*, No. 13-70003 (5th Cir. Aug. 11, 2014). Again, in a petition for rehearing en banc filed on September 2, 2014, Mr. Guevara argued that the district court misapplied the rule that a sufficient *Atkins* showing requires an opportunity to be heard. *See* Petition for Rehearing *En Banc* at 10-15, *Guevara v. Stephens*, No. 13-70003 (5th Cir. Sept. 2, 2014).

Mr. Guevara filed his petition for certiorari review in the Supreme Court on December 22, 2014. Mr. Guevara asked the Supreme Court to decide if "reasonable jurists [could] debate whether Mr. Guevara avoids § 2254(d) because the TCCA denied an opportunity to be heard" on his *Atkins* claim. The Supreme Court denied Mr. Guevara's certiorari petition without comment on April 27, 2015. *See Guevara v. Stephens*, 135 S. Ct. 1892 (2015).

The Supreme Court announced its decision in *Brumfield* on June 18, 2015. ARGUMENT Section I presents the content of that decision, which vindicated Mr. Guevara's position regarding § 2254(d), in more detail. Specifically, *Brumfield* made clear that a state court acts unreasonably if it denies an opportunity to be heard to an inmate who presents "sufficient" evidence to "raise a question" as to ID. *See* 135 S.Ct. at 2279. Evidence is sufficient to raise a question as to ID if it establishes "reasonable doubt." *Id.* at 2276. Countervailing evidence only disables the right to be heard if it "foreclose[s] all reasonable doubt" that the inmate is intellectually disabled. *Id.* at 2281. The opportunity to be heard includes the right to an evidentiary hearing. *See id.* at 2276. If a state court unreasonably rules out ID at a threshold stage without affording the claimant an opportunity to develop and be heard on the claim, then the § 2254(d) relitigation bar does not limit federal habeas relief. *See id*. at 2282.

## ARGUMENT

28 U.S.C. § 2254(d) bars relitigation of a state sentence, with certain exceptions.

Throughout this litigation, Mr. Guevara diligently argued that the state court unreasonably decided his *Atkins* claim by prematurely ruling out ID—without permitting the fact development necessitated by his threshold showing. *Brumfield* established that Mr. Guevara was correct, and that he avoids § 2254(d).

## I.     MR. GUEVARA IS ENTTILED TO RELIEF UNDER RULE 60(b)(6).

Federal Rule of Civil Procedure 60(b) provides relief from a "final judgment, order, or proceeding" in certain circumstances. Subsections (1) through (5) provide for Rule 60(b) relief in certain specific scenarios, and Subsection (6) provides that a Rule 60(b) motion be granted for "any other reason that justifies relief." FED. R. CIV. P. 60(b)(6); *see also Gonzalez v. Crosby*, 545 U.S. 524, 528-29 (2005) (holding that Rule 60(b)(6) "permits reopening when movant shows 'any…reason justifying relief from the operation of judgment' other than the more specific circumstances set out in Rules 60(b)(1)-(5)."); *Liljeberg v. Health Services Acquisition Corp*., 486 U.S. 847, 863, n. 11 (1988) (finding that petitioner's basis for relief sought is extraordinary and thus proper under 60(b)(6)); *Klaprott v. United States*, 335 U.S. 601, 613 (1949) (opinion of Black, J.) (finding that petitioner could avail himself of the "any other reason" clause of 60(b)(6) because the allegations set up an extraordinary situation which "cannot fairly or logically be classified as mere 'neglect'" under 60(b)(1)). To demonstrate "any other reason justifying relief" under Rule 60(b)(6), a petitioner must show "extraordinary circumstances." *Gonzalez*, 545 U.S. at 536. A party must also make a Rule 60(b)(6) motion "within a reasonable time." FED. R. CIV. P. 60(c)(1).

Rule 60(b) authority to reopen proceedings is equitable and discretionary. *See Balentine v. Thaler*, 626 F.3d 842, 846 (5th Cir. 2010) ("Rule 60(b)(6) is a grand reservoir of equitable power to do justice in a particular case when relief is not warranted by the preceding clauses. . .

."). Rule 60(b) "has an unquestionably valid role to play in habeas cases" and, "like the rest of the Rules of Civil Procedure, applies in habeas corpus proceedings. . . ." *Gonzalez*, 545 U.S. at 529, 534. The rule "should be liberally construed in order to do substantial justice. . . . [A]lthough the desideratum of finality is an important goal . . . it must yield, in appropriate circumstances, to the equities of the particular case in order that the judgment might reflect the true merits of the cause." *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. 1981).

### A.     Extraordinary Circumstances Warrant Reopening this Court's Judgment.

Extraordinary circumstances warrant reopening Mr. Guevara's judgment. First, in light of the strength of Mr. Guevara's threshold ID showing—including a neuropsychologist's affirmative diagnosis—there is a high risk that his execution would violate the Eighth Amendment. *See* ARGUMENT Section I.A.1, *infra.* Second, after the judgment in this case, the Supreme Court held in *Brumfield* that an inmate satisfies an exception to § 2254(d)'s relitigation bar when a state court unreasonably rules out ID based on a threshold showing sufficient "to raise a question as to whether" the inmate is intellectually disabled. 135 S. Ct. at 2279. *See* ARGUMENT Section I.B.2, *infra.* In light of the Supreme Court's opinion in *Brumfield*, it is clear that this Court erred in determining that § 2254(d) barred relitigation of Mr. Guevara's *Atkins* claim. Moreover, this is a capital case, and the Supreme Court has emphasized that death is different—meaning that close procedural questions should be resolved in an inmate's favor. *See Caldwell v. Mississippi*, 472 U.S. 320, 329 (1985) ("[T]he qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny of the capital sentencing determination") (quoting *California v. Ramos*, 463 U.S. 992, 998-99 (1983)).

### 1.     There is a High Risk of an Eighth Amendment Violation.

There is a high risk that, absent reopening, an Eighth Amendment violation will occur

when Texas executes Mr. Guevara. The Eighth Amendment categorically prohibits the execution of defendants with ID. *See Atkins*, 536 U.S. at 320. Executing those with ID fails to serve either of the two main rationales for the death penalty: deterrence and retribution. *See Hall v. Florida*, 134 S. Ct. 1986, 1992-93 (2014); *Atkins* 536 U.S. at 318-19. The death penalty is not an effective means of deterring people with ID because they are less capable of making calculated judgments. *See Hall*, 134 S. Ct. at 1993; *Atkins*, 536 U.S. at 319-20. ID reduces moral culpability, lessening the retributive value of the death penalty. *See Hall*, 134 S. Ct. at 1993; *Atkins*, 536 U.S. at 319. Moreover, because of their reduced capacity, defendants with ID face an especially high risk of receiving the death penalty in error. *See Atkins*, 436 U.S. at 320; *Hall*, 134 S. Ct. at 1993. Therefore, "the Constitution places a substantive restriction on the State's power to take the life" of a person with ID. *Atkins*, 436 U.S. at 321 (quotation marks omitted).

This is not a case in which scant evidence raises the mere possibility of ID; Mr. Guevara has made a strong threshold showing. That showing includes the opinion of a neuropsychologist who was contacted to rule out ID, but who evaluated Mr. Guevara and concluded that he is intellectually disabled. *See* Llorente Aff. at 10. In fact, that neuropsychologist is the only expert to have opined on Mr. Guevara's condition in a judicial proceeding. The showing also includes an IQ score of 60 and extensive evidence of poor adaptive functioning, early onset, and ID risk factors. That threshold showing notwithstanding, no court has ever decided his death eligibility in light of evidence that requires fact development and a hearing to present. The strong threshold showing, as well as the risk that an offender with ID may be executed absent federal merits review, are extraordinary circumstances warranting Rule 60(b) relief. "[C]ourts universally favor judgment on the merits, and . . . the underlying case here is sufficiently significant and potentially meritorious that it should not be cut off at its knees." *Ruiz v. Quarterman*, 504 F.3d

523, 532 (5th Cir. 2007) (permitting Rule 60(b) relief for a capital habeas claimant because "no federal court ha[d] considered the merits of Ruiz's constitutional claims," and explaining that the Rule 60(b) "procedural hurdle was erroneously placed in Ruiz's path"); *see id.* at 531-32 ("The main application of Rule 60(b) is to those cases in which the true merits of a case might never be considered. Thus, . . . we have reversed [a district court's denial of a Rule 60(b) motion] where denial of relief precludes examination of the full merits of the cause, explaining that in such instances even a slight abuse may justify reversal.") (quotation marks and footnotes omitted); *Seven Elves,* 635 F.2d at 402 (holding that merit to movant's claim weighs in favor of granting relief from judgment); *Jones v. Quarterman*, No. 4:05-CV-638-Y, 2008 WL 4166850, at *4 (N.D. Tex. Sept. 10, 2008) (granting Rule 60(b) motion to reopen judgment dismissing habeas petition as time barred "because this is a death penalty case, because the Fifth Circuit has indicated that a Rule 60(b) motion should be construed liberally in order to achieve substantial justice, and because the merits of Jones's habeas case have not been considered by a federal court and Jones would be prevented from presenting his potentially meritorious arguments to any court should this Court deny his motion").

## 2. The Supreme Court's Recent Decision in *Brumfield* Indicates that This Court's Judgment Was in Error.

After this Court issued its judgment, the Supreme Court issued a decision indicating a substantial error therein. In *Brumfield*, the Supreme Court held that it was unreasonable for a state court to rule out ID without holding a hearing on the basis of allegations far weaker than those presented by Mr. Guevara. (The ID criteria are addressed in Argument Sections I.A.2.a-2.c, *infra.*) To prove an *Atkins* violation, a claimant must show significant limitations in intellectual functioning and adaptive behavior, the onset of which occurred prior to the age of eighteen. *See Brumfield v. Cain*, 135 S. Ct. 2269, 2274 (2015); *Atkins v. Virginia*, 536 U.S. 304, 308 n.3

(2002); *Ex Parte Briseño* 135 S.W.3d 1, 7 (Tex. Crim. App. 2004).

At the time of Brumfield's trial, the Supreme Court had not yet ruled that the Eighth Amendment prohibited the execution of defendants with ID. *See Brumfield*, 135 S. Ct. at 2273. After the Supreme Court issued its decision in *Atkins*, Brumfield amended his state habeas application to include a claim that he was exempt from execution because of his ID. *See id.* at 2274. Brumfield requested an evidentiary hearing, but the state court ruled that the allegations before it permitted it to rule out an *Atkins* claim without any further fact-finding, and without a hearing. *See id.* at 2274-75.

Brumfield filed a federal habeas petition. *See id.* at 2275. The Supreme Court ultimately held that, under § 2254(d), a state court confronted with some evidence of ID unreasonably denies an *Atkins* claim on the merits if it fails to furnish the inmate with further opportunity to be heard on the evidence supporting that claim. *See id.* The *Brumfield* opinion sets forth the evidence on which, in the Supreme Court's view, it was unreasonable for the state court to rule out ID absent a hearing:

> In support, Brumfield pointed to mitigation evidence introduced at the sentencing phase of his trial. He focused on the testimony of . . . [:] his mother; Dr. Cecile Guin, a social worker who had compiled a history of Brumfield by consulting available records and conducting interviews with family members and teachers; and Dr. John Bolter, a clinical neuropsychologist who had performed a number of cognitive tests on Brumfield. A psychologist, Dr. Brian Jordan, had also examined Brumfield and prepared a report, but did not testify at trial. Brumfield contended that this evidence showed, among other things, that he had registered an IQ score of 75, had a fourth-grade reading level, had been prescribed numerous medications and treated at psychiatric hospitals as a child, had been identified as having some form of learning disability, and had been placed in special education classes.

*Id.* at 2274-75.

Contrary to this Court's prior holding regarding the sufficiency of Mr. Guevara's ID evidence, *Brumfield* clarified that the standard defendants must meet to be entitled to an *Atkins*

hearing is not a high one. A defendant need not show that he has ID, "or even that he would likely be able to prove as much." *Id.* at 2281. The record before the state court need only "contain[] . . . sufficient evidence to raise a question as to whether" the defendant meets the "criteria" for ID. *Id.* at 2279. Countervailing evidence does not disable a defendant's entitlement to an *Atkins* hearing unless it "foreclose[s] all reasonable doubt." *Id.* at 2281. Mr. Guevara presented more than enough evidence to meet the low threshold enumerated in *Brumfield.* As set forth below, the record discloses that Mr. Guevara has a low IQ, adaptive deficits, and early onset, which—coupled with an expert opinion that he has ID—"raised substantial reason to believe" that he satisfies *Atkins. Id.*

*Brumfield* clarifies that this Court erred in holding that the § 2254(d) bar applied on the grounds that: (1) Mr. Guevara's IQ score of 60 was characterized by inconsistent subtest scores, (2) Mr. Guevara received a higher score on a second test that was "inconsistent with a mental-retardation diagnosis," (3) there were other possible explanations for Mr. Guevara's low scores, such as posttraumatic stress disorder and "frontal lobe systems dysfunction," (4) Dr. Llorente's report did not comport with standard criteria for assessing adaptive functioning, (5) the record contains some signs that Mr. Guevara had strong adaptive functioning, and (6) Mr. Guevara's brother "answered . . . negatively" when trial counsel asked him if Mr. Guevara had ID. Memorandum and Order at 14-15, 17-19, *Guevara v. Thaler*, No. 4:08-cv-01604 (S.D. Tex. Sept. 25, 2012) (No. 48). For each of the three ID criteria—intellectual impairment, adaptive deficits, and developmental onset—Mr. Guevara's evidence was far stronger than that deemed sufficient to disable § 2254(d) in *Brumfield*. This Court erred in brushing aside Mr. Guevara's evidence of ID, which was more developed than Brumfield's, as "tentative" and "inconsistent with other information in the record." Memorandum and Order at 21, *Guevara v. Thaler*, No. 4:08-cv-

01604 (S.D. Tex. Sept. 25, 2012) (No. 48).

### a.    Intellectual Functioning.

First, Mr. Guevara's evidence of impaired intellectual functioning is stronger than that in *Brumfield*. Mr. Guevara has an IQ score fifteen points lower than the score presented by Brumfield, and—unlike Brumfield—an expert opinion (with no other expert opinion opposing it) that his intellectual functioning is impaired enough to qualify him for a diagnosis of ID. Brumfield received an IQ score of 75 on one test, and received a higher IQ score on a second test. Taking into account the standard error of measurement (SEM), Brumfield's reported IQ test result of 75 "was squarely in the range of potential intellectual disability." 135 S. Ct. at 2278. In other words, with the SEM of plus or minus five points, Brumfield's score was at the upper end of the potential range of ID. *See id.* at 2278; *see also, Hall v. Florida*, 135 S. Ct. 1986, 1996 (2014) (noting that ID may exist, taking into account the SEM, if a person has an IQ of 75 or below). The state court's ruling—that the 75 score meant that Brumfield could not establish that he had sub average intelligence—was unreasonable. *See Brumfield*, 135 S. Ct. at 2278. The Court explained that the state court's decision was unreasonable even though Brumfield had scored higher than 75 on a second IQ test. *See id.* From what was known about the second score at the threshold stage, "[t]he state court . . . could not reasonably infer" that it "was sufficiently rigorous to preclude definitively the possibility that Brumfield possessed sub average intelligence." *Id.* at 2278–79.

In Mr. Guevara's case, the state-court record contains not only an IQ score far lower than Brumfield's, but also an expert opinion that Mr. Guevara's low IQ scores are consistent with ID. *See id.* The state-court record reflected an IQ score of 60—fifteen points below Brumfield's. *See* Llorrente Aff. at 6. Mr. Guevara's IQ score was so low that it placed him below the first

percentile in terms of intellectual functioning. *See id.* Taking into account the SEM of plus or minus five points, his IQ falls in the range of 55 to 65. *See id.* Mr. Guevara's is not a borderline score or in the upper range of potential ID; even more so than Brumfield's score, it is "entirely consistent with intellectual disability." 135 S. Ct. at 2277. The state court record further reflected that Mr. Guevara received a score of 77 on a test that was "less stringent" than the former. Llorrente Aff. at 7. Given Mr. Guevara's IQ score of 60, his score of 77 on an unreliable test does not "preclude definitively the possibility that [Mr. Guevara] possessed sub average intelligence." *Id.* at 2279. Finally, unlike in Brumfield's case, the only expert to examine Mr. Guevara for ID determined that his IQ scores qualify him for an ID diagnosis. The state court record reflected an expert opinion that, in view of both IQ scores, Mr. Guevara possessed significant limitations in intellectual functioning. *See id.* at 13 (Mr. Guevara's "scores meet criteria consistent with that provided by the [AAIDD] indicative of mental retardation").

### b.   Adaptive Deficits.

Second, as regards adaptive functioning, the state-court record discloses that Mr. Guevara had even more adaptive deficits than Brumfield. Unlike Brumfield's record, the state-court record in Mr. Guevara's case discloses a detailed history of ID risk factors, impaired development, and poor adaptive functioning. Moreover, the only expert to examine Mr. Guevara for ID determined that his adaptive behavior met the criteria for ID; Brumfield's record contained no expert opinion on the issue of ID. Adaptive behavior "is the collection of conceptual, social, and practical skills that have been learned and are performed by people in their everyday lives." AAIDD, INTELLECTUAL DISABILITY 43. Adaptive behavior is measured across three dimensions: (1) conceptual skills, which includes: skills in language, reading and writing, and money, time, and number concepts; (2) social skills, which includes: skills in

interpersonal relationships, social responsibility, self-esteem, gullibility, naïveté, following rules, obeying laws, avoidance of victimization, and social problem solving; and (3) practical skills, which includes: skills in the activities of daily living, occupational skills, use of money, safety, health care, travel and transportation, schedules, and use of the telephone. *See id.* at 44.

In Brumfield's case, the state-court record contained evidence that Brumfield: had a low birth weight; had slower responses than normal babies; was hospitalized at a young age because of behavioral issues; suffered a seizure; took special classes in school; was placed in multiple mental-health facilities; was prescribed anti-psychotic and sedative drugs; had a learning disability and impaired motor development; and read at the level of a fourth grader. *See Brumfield*, 135 S. Ct. at 2279-80. Based on this evidence, the Supreme Court determined that the record "contained sufficient evidence to raise a question as to whether Brumfield" met the adaptive-functioning criteria. *Id.* at 2279.

The Court ruled that the evidence made a prima facie showing even though other evidence in the record showed strong adaptive functioning. For example, a neuropsychologist stated that Brumfield had a "normal capacity to learn and acquire information" and was "normal from a neurocognitive perspective." *Id.* at 2281. The facts of Brumfield's crime showed that he had an ability to engage in "advanced planning," such as acquiring a car and guns. *Id.* The Court pointed out that "[i]t is critical to remember . . . that in seeking an evidentiary hearing, Brumfield was not obligated to show that he was intellectually disabled, or even that he would likely be able to prove as much." *Id.* Even given the strong countervailing evidence, the evidence in the state record raised enough of a question of Brumfield's adaptive functioning that he was entitled to an evidentiary hearing to further develop evidence of his ID. *See id.*

In Mr. Guevara's case, the state-court record discloses that Mr. Guevara has had impaired

adaptive functioning throughout his life across all three domains: conceptual, social, and practical. It also includes an expert opinion that Mr. Guevara's adaptive functioning is low enough to qualify him for a diagnosis of ID.

The state court record shows that Mr. Guevara had significant impairments as a child. *See* Llorente Aff. at 15. Mr. Guevara was delayed in achieving his developmental milestones: He did not did not walk until the age of two; did talk until the age of four; did not have normal play skills; and could not tie his shoes at the age of seven. *See id.* Mr. Guevara's birth and early childhood met various risk factors for ID. There were difficulties in his delivery: His mother had a "complicated pregnancy" and "unduly extended labor," and it appeared that he may have suffered from lack of oxygen to his brain at birth, so much so that "the midwife believed that he was not a viable product." *See id.* at 2, 15. He had a low birth weight, was born with chicken pox, had high fevers with no medical treatment, was raised in an impoverished and unsanitary environment, suffered from malnutrition, and did not breastfeed well. *See id.* at 2, 15-16.

When he was a young boy, Mr. Guevara's deficits persisted. Mr. Guevara was academically impaired: He dropped out of school at grade three because he could not learn. *See id.* He had difficulty understanding simple instructions, such as remembering to bring milk home from the store, and could not perform simple tasks, like grinding corn. *See id.* at 3, 15.

As a teenager, Mr. Guevara was incapable of meeting basic expectations in the workplace. Working in unpaid or low-paying apprenticeships, Mr. Guevara was "confused" and "forgetful," and could not learn simple mechanical tasks. *See id.* at 4-5, 15. When asked to fetch a specific tool, Mr. Guevara would bring the wrong tool. *See id.* at 3. Because of his lack of understanding, Mr. Guevara could not be trained. *See id.* at 3-4. He could not perform simple tasks, even after correction and explanation. *See id.* at 4. Apprentices younger than Mr. Guevara

advanced far more quickly than he did. *See id.*

Mr. Guevara's adaptive deficits continued to manifest in his adulthood. Mr. Guevara was "dependent" on others to function in society, demonstrating poor judgment, impulsive behaviors, inability to regulate his emotions, and inability to rationally and logically solve problems. *Id.* at 15. His speech was "primitive" for his age and he had difficulty understanding and following instructions. *Id.* at 4. Although he could read words at a seventh-grade level, his reading understanding and picture vocabulary were at the level of a fourth grader. *See id.* at 6. Based on Mr. Guevara's developmental history and difficulty functioning in ordinary life, an expert determined that Mr. Guevara exhibited "a clear pattern of poor adaptive behaviors." *Id.* at 15. The expert determined that Mr. Guevara's history of poor adaptive functioning supported a diagnosis of ID. *See id.* at 13.

Mr. Guevara's evidence of impaired adaptive functioning is more robust than Brumfield's. Whether Dr. Llorente met the standard criteria for assessing adaptive functioning, which this Court considered significant, *see* Memorandum and Order at 17, *Guevara v. Thaler*, No. 4:08-cv-01604 (S.D. Tex. Sept. 25, 2012) (No. 48), is not a relevant question at this stage; in fact, Brumfield presented no expert opinion that he had low adaptive functioning. Some evidence of strong adaptive functioning does not extinguish a defendant's entitlement to an evidentiary hearing. *See id.* at 17-20 (stating that some evidence in record pointed to strong adaptive functioning). Even if Mr. Guevara's record discloses signs of strong adaptive functioning in some areas—which he disputes—the evidence of his deficits "raised substantial reason to believe that he suffers from adaptive impairments." *Brumfield*, 135 S. Ct. at 2281.

### c.    Developmental Onset

Finally, the record discloses that Mr. Guevara's deficits surfaced before the age of

eighteen. Brumfield presented no expert opinion on the question of early onset. In contrast, the only expert to examine Mr. Guevara for ID determined that his impairments appeared before he turned eighteen, qualifying him for a diagnosis of ID. *See* Llorente Aff. at 10. In *Brumfield*, the Supreme Court noted that the state court record contained "ample evidence" of early onset, including testimony from two doctors regarding Brumfield's "intellectual shortcomings as a child and their possible connection to his low birthweight." *Brumfield*, 135 S. Ct. at 2283. Likewise, there is substantial evidence in the record that Mr. Guevara meets the third prong of the ID analysis: Mr. Guevara had a low birth weight, was delayed in meeting developmental milestones, could not following simple instructions, and had difficulty functioning in the apprenticeships he undertook before the age of eighteen. *See* Llorente Aff. at 15. The only expert to evaluate Mr. Guevara for ID determined that he had intellectual disability, based in part on "the fact that his impairments had an early onset (before the age of 18 years)." *Id.* at 10.

**B.      This Motion Has Been Made In a Reasonable Time.**

Whether a motion has been filed within a reasonable time, like the extraordinary circumstances inquiry, is evaluated with respect to a petitioner's diligence. *See Gonzalez*, 545 U.S. at 537 (circumstances were "all the less extraordinary" because of petitioner's lack of diligence in pursuing review of the statute-of-limitations issue."). A finding of diligence indicates that a petitioner has acted in a timely fashion in pursuing his remedies.

Mr. Guevara has filed this Rule 60(b) motion in a timely fashion. The Supreme Court denied certiorari review of Mr. Guevara's case on April 27, 2015. *See Guevara v. Stephens*, 135 S. Ct. 1892 (2015). The Supreme Court issued its opinion in *Brumfield v. Cain* on June 18, 2015. *See Brumfield v. Cain*, 135 S. Ct. 2269 (2015). He made the argument he presents here, and that was endorsed in *Brumfield*, at every phase of his federal proceedings.

## II.   2254(d) IS A RELITIGATION BAR, AND A RULE 60(b)(6) CHALLENGE SHOULD NOT BE TREATED AS A SUCCESSIVE HABEAS PETITION.

Mr. Guevara is aware that certain Rule 60(b) motions are to be analyzed as successive federal habeas petitions under superseding statutory law. *See Gonzalez v. Crosby*, 545 U.S. 524, 531 (2005). Mr. Guevara's Rule 60(b) Motion should not be treated as a successive petition, however. This Motion honors the distinction between permissible Rule 60(b) motions and impermissible attempts to circumvent the successive-petition rules because it challenges the Court's application of § 2254(d), rather than a ruling on the merits of Mr. Guevara's claim.

28 U.S.C. § 2244(b)(3) is a successive-petition rule that requires a prisoner to seek and receive authorization from a federal appeals court before filing of a second or successive petition for habeas corpus relief. Some Rule 60(b) motions are to be treated as successive petitions, but Mr. Guevara's motion does not fall in that category. The leading case on the line between Rule 60(b) motions that are to be analyzed under the Federal Rules and Rule 60(b) motions that are to be treated as successive petitions is *Gonzalez v. Crosby*, 545 U.S. 524 (2005). *See id*. at 529-36. A challenge to this Court's prior interpretation of the § 2254(d) relitigation bar, like Mr. Guevara's, is a permissible challenge to a "previous ruling which precluded a merits determination[,]" rather than an impermissible challenge to this Court's "previous resolution of a claim on the merits[]." *Gonzalez*, 545 U.S. at 533 & n.4.[2]

### A.   A Motion Challenging a Court's Ruling on a Feature of the Habeas Remedy is Not a Second or Successive Petition.

The successive-petition requirements in 28 U.S.C. § 2244(b) only apply to "applications" for habeas corpus. *See id.* at 530. An "application" within the meaning of

---

[2] If the challenge were to this Court's prior resolution of the merits, then the exclusive vehicle for such a challenge would be a successive habeas petition subject to the strictures of 28 U.S.C. § 2244(b). *See Gonzalez*, 545 U.S. at 530-32.

§ 2244(b) is "a filing that contains one or more *claims*." *Id.* (internal quotation marks omitted and emphasis added)*. Gonzalez* requires district courts to treat certain Rule 60(b) motions that present a "claim" as successive habeas petitions. *See id.* at 530-32. A Rule 60(b) motion brings a prohibited claim when it: (1) adds a new ground for relief that was previously omitted due to "excusable neglect," "newly discovered evidence," or a "subsequent change in substantive law" or (2) attacks the federal court's prior resolution of the claim on the merits. *See id.* at 530-32. In other words, *Gonzalez* requires successive-petition treatment for Rule 60(b) motions that either bring a new claim or that seek reconsideration of a previously-asserted claim *on the merits*.

A motion does not bring a claim "when a Rule 60(b) motion attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings." *Id.* at 532; *see also Balentine v. Thaler*, 626 F.3d 842, 846 (5th Cir. 2010) ("Accordingly, to succeed on his Rule 60(b) motion, . . . he must not be challenging a prior merits-based ruling. He needed to show that a previous ruling which precluded a merits determination was in error[.]") (internal quotation marks omitted); *Ruiz*, 504 F.3d at 526 ("The federal district court's previous denial of Ruiz's claim was not on the merits. . . . So the district court had jurisdiction to consider Ruiz's Rule 60(b) motion, free of the jurisdictional constraints of AEDPA upon successive petitions."). A district court can therefore consider a Rule 60(b) motion when the applicant "asserts that a previous ruling which precluded a merits determination was in error—for example, a denial for such reasons as failure to exhaust, procedural default or statute-of-limitations bar." *Ruiz*, 504 F.3d at 526 (quotation marks omitted).

**B.     Mr. Guevara's Rule 60(b) Motion is Not a Second or Successive Petition Because it Challenges the Court's Application of § 2254(d).**

A denial on the ground that § 2254(d) limits the court's power to grant relief is *not* a merits determination; by definition, it is a ruling which precludes a merits determination. Section

2254(d) prohibits a federal court from granting relief on any habeas corpus claim "that was adjudicated on the merits in state court proceedings" unless the state court's adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). The Supreme Court has characterized this provision as a "relitigation bar," because it gives preclusive effect to state court adjudications of habeas corpus claims notwithstanding their merit unless certain conditions are present allowing relitigation in the federal forum.[3]

When a court determines that a claim is barred by § 2254(d), it is not determining the merit of a habeas claim, i.e., whether the applicant is in custody in violation of the United States Constitution. It is merely conducting an inquiry into its own power to grant relief notwithstanding whether the applicant is in custody in violation of the United States under 28 U.S.C. §2254(a). As the Supreme Court has repeatedly made clear, a finding that § 2254(d) precludes a federal habeas remedy does not mean that, as a matter of substantive law, a person's custody is constitutional. *See, e.g., Glebe v. Frost*, 135 S. Ct. 429, 430 (2014) (finding that the relitigation bar precluded relief even while "[a]ssuming for argument's sake that the trial court violated the Constitution"); *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014) (assuming *arguendo* that constitutional violation occurred while concluding that § 2254(d) barred relitigation). *See also*

---

[3] Section 2254(d)'s relitigation bar can be understood as analogous to collateral estoppel (issue preclusion) in the ordinary civil context. "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (citing *Montana v. United States*, 440 U.S. 147, 153 (1979)).

*Salts v. Epps*, 676 F. 3d 468, 480 (5th Cir. 2012) (after finding that the (d)(2) exception to the relitigation bar was present, holding that the applicants "may obtain relief if they can show, on de novo review, that they are 'in custody in violation of the Constitution or laws or treaties of the United States'") (citing 28 U.S.C. § 2254(a)). Section 2254(d) does not provide criteria for a merits inquiry; it is one remedial limit among "several *threshold issues* that could independently preclude habeas *relief*." *Medellin v. Dretke*, 544 U.S. 660, 664 (2005) (per curiam) (emphasis added). Within the federal habeas regime, therefore, a "[federal] court's assessment of the constitutional claim," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), is separate from—and typically happens after—the assessment of whether § 2254(d) precludes relief. Accord *Lafler v. Cooper*, 132 S. Ct. 1376, 1390 (2012) (assessing the merits of the *Strickland* claim after making the threshold finding that § 2254(d) "does not present a *bar* to granting respondent *relief*") (emphasis added); *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007) (after finding that the § 2254(d) bar to relief did not apply because the state court unreasonably applied federal law, proceeding "to the [merits] question petitioner asks the Court to resolve").

Comparing § 2254(d)'s relitigation bar to § 2254(b)'s exhaustion bar confirms the procedural nature of §2254(d). Both provisions utilize identical language to express their effect on the court's power. Both sections provide that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted" unless certain conditions other than the legality of the applicant's confinement are present. 28 U.S.C. § 2254(d); *id.* § 2254(b)(1). Neither provision requires the court to determine whether the applicant is in custody in violation of the Constitution. Just as a district court may consider a motion to reopen a habeas judgment when the applicant asserts that a previous ruling that he failed to exhaust was in error, *see Gonzalez*, 545 U.S. at 532 n.4, so, too, does a court have

jurisdiction consider a motion to reopen when the applicant asserts that a previous ruling as to whether an exception to the relitigation bar is present was in error. *See Medellin*, 544 U.S. at 664-666 (listing § 2254(d) as a bar to relief alongside, *inter alia*, the *Teague* bar and the § 2254(b)(1) exhaustion requirement).

* * *

Mr. Guevara's Rule 60(b) Motion is not a second or successive petition under *Gonzalez*. It does not add a new ground for relief. Moreover, it does not attack this Court's resolution of the *Atkins* claim on the merits. (In fact, it could not do so because the Court never resolved that claim on the merits.) The target of this Rule 60(b) motion is the district court's erroneous ruling that § 2254(d) precluded the court from granting relief. The Court's ruling that its power to grant relief was eliminated by the prior state court adjudication was a ruling about the habeas remedy, not a substantive ruling on the merits of the claim. Accordingly, his motion challenging that ruling is not a successive application subject to the requirements of 28 U.S.C. §2244(b).

## <u>CONCLUSION AND PRAYER FOR RELIEF</u>

Mr. Guevara respectfully prays that the Court grant this motion and undertake plenary consideration of the *Atkins* claim.

Respectfully submitted,

By: /s/    Lee B. Kovarsky

Thomas S. Berg                        Lee B. Kovarsky
State Bar No. 02189200                State Bar No. 240153310
4306 Yoakum Blvd., Suite 400          TEXAS DEFENDER SERVICE
Houston, TX 70006                     500 West Baltimore, Room 436
713.236.1900                          Baltimore, MD 21201
tomberg@msblawyers.com                434.466.8257
                                      lkovarsky@texasdefender.org

                                      *Counsel to Petitioner Gilmar Guevara*

1

**<u>CERTIFICATE OF CONFERENCE</u>**

On October 21, 2015, I contacted counsel for Respondent, who indicated that Respondent is OPPOSED to the Motion.

/s/ Lee B. Kovarsky
Lee B. Kovarsky

## <u>CERTIFICATE OF SERVICE</u>

On October 21, 2015, undersigned counsel served via CM/ECF this application on the following counsel for the parties:

Edward Larry Marshall
Office of the Attorney General
P O Box 12548
Capitol Station
Austin, TX 78711
512-936-1400
Fax: 512-320-8132
Email: edward.marshall@texasattorneygeneral.gov

Katherine D Hayes
Office of Texas Attorney General
P O Box 12548
Austin, TX 78711-2548
512-936-1400
Fax: 512-320-8132
Email: katherine.hayes@texasattorneygeneral.gov

*Counsel for Respondent*

/s/ Lee B. Kovarsky
Lee B. Kovarsky