Case 4:08-cv-01604 Document 72 Filed in TXSD on 01/26/16 Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
January 26, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GILMAR ALEXANDER GUEVARA, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-08-1604 |
| | § | |
| WILLIAM STEPHENS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## ORDER

Gilmar Alexander Guevara shot and killed two people while robbing a Houston convenience store in 2000. A jury convicted him of capital murder. He was sentenced to death.

After exhausting state remedies, Guevara filed a federal petition for a writ of habeas corpus. Among other issues, Guevara argued that his intellectual disability precludes his execution under *Atkins v. Virginia*, 536 U.S. 304 (2002). On September 25, 2012, the court issued a Memorandum and Order denying habeas relief. (Docket Entry No. 48). Guevara appealed, without success.

Guevara has filed a "Motion under Fed. R. Civ. P. 60(b)(6) to Reopen Judgment and Reverse Order Finding That 28 U.S.C. § 2254(d) Precludes Relief." (Docket Entry No. 69). He argues that substantial evidence shows that he is intellectually disabled and that the recent Supreme Court decision, *Brumfield v. Cain*, ___ U.S. ___, 135 S. Ct. 2269 (2015), changed *Atkins* jurisprudence in his favor. William Stephens, the Director of the TDCJ, filed a response in opposition, (Docket Entry No. 70), and Guevara replied, (Docket Entry No. 71). For the reasons discussed below, the court finds that Guevara has not shown that he is entitled to relief from judgment.

**I.     Background**

Guevara's Rule 60(b)(6) motion requires a review of how he litigated his *Atkins* claim. The evidence at trial did not suggest that Guevara suffered from intellectual disability. The Supreme Court issued *Atkins* several months before Guevara filed his initial state habeas application. For the first time, the Supreme Court held that "death is not a suitable punishment for [an intellectually disabled] criminal." *Atkins*, 536 U.S. at 321. The *Atkins* Court defined "intellectual disability" as

> substantial limitations in present functioning. It is characterized by significantly subaverage intellectual functioning, existing concurrently with related limitations in two or more of the following applicable adaptive skill areas: communication, self-care, home living, social skills, community use, self-direction, health and safety, functional academics, leisure, and work. [Intellectual disability] manifests before age 18.

*Atkins*, 536 U.S. at 308 n.3 (quotation omitted).[1] *Atkins* relief requires a showing of: (1) significantly subaverage intellectual functioning, indicated by a full-scale score of 70 (with a five-point standard error of measurement)[2] on a recognized IQ test; (2) related significant limits in adaptive skills; and (3) manifestation of those limits before age 18. *See Lewis v. Quarterman*, 541 F.3d 280, 283 (5th Cir. 2008); *Clark v. Quarterman*, 457 F.3d 441, 444 (5th Cir. 2006). Despite a federal consensus on the factors in an *Atkins* analysis, the Supreme Court has "le[ft] to the State[s] the task of developing appropriate ways to enforce the constitutional restriction upon [their] execution of sentences." *Atkins*, 536 U.S. at 317 (quotation omitted).

---

[1] Professional organizations previously used the term "mental retardation" when referring to those suffering from the above-stated factors. The Supreme Court also used the term mental retardation in the *Atkins* decision. Recent cases, however, have adopted the psychological community's current use of the term "intellectual disability." *See Brumfield v. Cain*, ___ U.S. ___, 135 S. Ct. 2269, 2274 n.1 (2015); *Hall v. Florida,* ___ U.S. ___, 134 S. Ct. 1986, 1992 (2014).

[2] "Each IQ test has a 'standard error of measurement,' . . . which reflects the reality that an individual's intellectual functioning cannot be reduced to a single numerical score . . . [but] is best understood as a range of scores on either side of the recorded score." *Hall v. Florida*, 134 S. Ct. 1986, 1995 (2014). The typical cutoff score for the intellectual functioning prong of the definition is an IQ between 70 and 75 or lower. *Atkins*, 536 U.S. at 309 n. 5.

Guevara's initial habeas application did not allege that he was intellectually disabled. That omission framed how later courts addressed his *Atkins* arguments. Three years after filing his initial state habeas application, but before the Texas Court of Criminal Appeals had ruled on it, Guevara filed a "Subsequent Application for Art. 11.071 Writ of Habeas Corpus" in the state district court. Guevara raised three claims relating to *Atkins*. Guevara argued that: (1) his intellectual disability prevents his execution under *Atkins*; (2) only a jury can decide whether he merits *Atkins* protection; and (3) trial counsel provided ineffective assistance by not uncovering his mental deficiencies.

Guevara's *Atkins* claims faced procedural impediments to state review. Texas law generally limits state habeas review to the claims raised and briefed in an inmate's initial habeas application. Texas law treat pleadings filed outside a statutorily set period as a new habeas action. *See* TEX. CODE CRIM. PRO. art. 11.071 § 5(f). The trial-level state habeas court found that Guevara had raised his *Atkins* claim too late and treated it as a successive habeas action. Following Texas procedure, the trial court forwarded Guevara's successive application to the Court of Criminal Appeals. *See* TEX. CODE CRIM. PRO. 11.071 § 5(b)(3). Under § 5, an inmate may proceed on a successive habeas action only if he shows that: new law applies or there are newly discovered facts (§ 5(a)(1)); he is actually innocent of the crime of conviction (§ 5(a)(2)); or he is actually innocent of the death penalty (§ 5(a)(3)). The Court of Criminal Appeals ruled that Guevara's default required dismissing the subsequent habeas application, issuing an order that did not clarify whether the Texas courts had considered the substance of the *Atkins* claim in the dismissal decision. *Ex parte Guevara*, 2007 WL 1493152, at *1 (Tex. Crim. App. 2007) (unpublished).

After the conclusion of state habeas review, Guevara filed a federal petition raising his *Atkins* claim. The order issued by the Texas Court of Criminal Appeals did not show whether it had

3

procedurally dismissed Guevara's *Atkins* claim—resulting in a federal bar—or had denied it on the merits—allowing for substantive federal review. After receiving extensive briefing, this court held that no adequate and independent procedural bar foreclosed federal consideration of Guevara's *Atkins* claim under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). (Docket Entry No. 26).

The AEDPA generally requires a federal court to apply a deferential review of claims "adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). Deferential review is not required if the state court violated due process by "dismiss[ing] a *prima facie* valid *Atkins* claim without having afforded the petitioner an adequate opportunity to develop the claim." *Blue*, 665 F.3d at 657. "[W]hen a petitioner makes a *prima facie* showing of intellectual disability, a state court's failure to provide him with an opportunity to develop his claim deprives the state court decision of the deference ordinarily due under the AEDPA." *Wiley v. Epps*, 625 F.3d 199, 207 (5th Cir. 2010); *see also Garcia v. Stephens*, 757 F.3d 220, 225 (5th Cir. 2014); *Ladd v. Stephens*, 748 F.3d 637, 644-45 (5th Cir. 2014).

The state court's dismissal of an *Atkins* claim after a habeas petitioner makes a *prima facie* showing of validity carries a second consequence as well. The federal court must allow the petitioner to develop the factual basis for his claim in the federal habeas proceeding. *Blue*, 665 F.3d at 657.

After ordering the parties to brief whether Texas had provided Guevara a sufficient opportunity to develop his *Atkins* claim, this court found that Guevara had not made a *prima facie* showing of a valid claim to the state courts. This court reviewed the record and "conclude[d] that the evidence Guevara put before the state court did not make a *prima facie* showing and therefore

4

no additional fact development or hearing is required." (Docket Entry No. 48 at 11).

This court then examined whether Guevara's *Atkins* claim entitled him to relief under the AEDPA. Section 2254(d)(2) required Guevara to show that the adjudication of his *Atkins* claim in the Court of Criminal Appeals "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Reviewing the evidence, this court found that "the Court of Criminal Appeals was not unreasonable in finding that Guevara had not shown that he was [intellectually disabled]." (Docket Entry No. 48 at 23).

Guevara appealed and sought a certificate of appealability. The Fifth Circuit found that "Guevara did not make a *prima facie* case for an intellectual disability." *Guevara*, 577 F. App'x at 373. The Fifth Circuit subsequently summarized why Guevara's evidence did not present a *prima facie Atkins* claim.

> Guevara did not make a *prima facie* case for an intellectual disability. In state habeas proceedings he presented no full-scale results from an accepted IQ test. He presented a full-scale IQ score of 77 on one test, the TONI–2, which Texas courts do not find to be a valid measure of intellect. *See Maldonado v. Thaler*, 625 F.3d 229, 240–41 (5th Cir. 2010). On various sections of various other IQ tests, his scores ranged from 60 to 91. He presented no evidence at all that any intellectual disability he had appeared before the age of 18. His expert's evidence conflicted with much of the other evidence presented about Guevara's intellectual abilities, such as his ability to excel at various jobs and learn new skills. . . .The record showed evidence of Guevara's intellectual abilities, work performance, and an absence of adaptive limitations. Dr. Llorente's affidavit, on which Guevara bases his *Atkins* claim, conflicts with much of the other evidence in the record.

*Guevara v. Stephens*, 577 F. App'x 364, 373 (5th Cir. 2014). Agreeing that this court "properly analyzed this claim under the AEDPA," the Fifth Circuit declined to issue a certificate of appealability because "reasonable jurists could not debate the underlying constitutional claim." *Id*.

Guevara filed a petition for a writ of *certiorari* in the United States Supreme Court. On April 27, 2014, the Supreme Court denied *certiorari* review. *Guevara v. Stephens*, ___ U.S. ___, 135 S. Ct. 1892 (2015). A few weeks later, the Supreme Court issued its opinion in *Brumfield v. Cain*, ___ U.S. ___, 135 S. Ct. 2269 (2015).

Guevara's Rule 60(b) motion asks this court to reopen the judgment and grant him relief on two grounds. Guevara first argues that, "in light of the strength of Mr. Guevara's threshold [intellectual disability] showing—including a neuropsychologist's affirmative diagnosis—there is a high risk that his execution would violate the Eighth Amendment." (Docket Entry No. 69 at 10). Guevara also contends that under *Brumfield*, when the "state court unreasonably rules out [intellectual disability] based on a threshold showing sufficient 'to raise a question as to whether' the inmate is intellectually disabled," AEDPA deference is not appropriate. (Docket Entry No. 60 at 10). Guevara argues that under *Brumfield*, an inmate raises a "'substantial reason to believe' that he satisfies *Atkins*" by presenting "a low IQ, adaptive deficits, and early onset, which—coupled with an expert opinion that he has [intellectual disability]." (Docket Entry No. 60 at 14).

## Rule 60(b)(6)

Guevara moved for relief from the judgment under the "catchall provision" of Rule 60(b). *Solis v. Dretke*, 436 F. App'x 303, 306 (5th Cir. 2011). The Fifth Circuit has "consistently held that relief under [section] 60(b)(6) is mutually exclusive from relief under sections (1)-(5)." *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 643 (5th Cir. 2005).

Rule 60(b)(6) is "an extraordinary remedy" because "'[t]he desire for a judicial process that is predictable mandates caution in reopening judgments.'" *Carter v. Fenner*, 136 F.3d 1000, 1007 (5th Cir. 1998) (quoting *Bailey v. Ryan Stevedoring Co., Inc.*, 894 F.2d 157, 160 (5th Cir. 1990)).

Rule 60(b)(6) motions "will be granted only if extraordinary circumstances are present." *Hess v. Cockrell*, 281 F.3d 212, 216 (5th Cir. 2002).

**II.    Analysis**

Guevara first argues that he is entitled to relief under Rule 60(b)(6) because he raised a strong *Atkins* claim in federal court. This court extensively reviewed the evidence supporting Guevara's *Atkins* claim and found that he "did not make the *prima facie* showing necessary to require the state court to allow him additional factual development." (Docket Entry No. 48 at 15). Guevara nevertheless asserts that "[t]here is a high risk that, absent reopening, an Eighth Amendment violation will occur" because he "has made a strong threshold showing" of intellectual disability. (Docket Entry No. 69 at 10-11).

To the extent that Guevara asks this court to reopen its judgment based on the strength of his *Atkins* claim, he has not shown a basis for relief. *McMillian v. MBank Fort Worth, N.A.*, 4 F.3d 362, 367 (5th Cir. 1993). An appeal, not a Rule 60(b)(6) motion, is the appropriate vehicle to challenge a district court's judgment on the merits. *See Diaz v. Stephens*, 731 F.3d 370, 377-78 (5th Cir. 2013). Guevara appealed this court's denial of the habeas petition. The Supreme Court affirmed and denied *certiorari* shortly before issuing the *Brumfield* opinion. Guevara has shown no basis for this court to reconsider his *Atkins* claim challenging the merits.[3]

Guevara also overstates the strength of the evidence supporting his *Atkins* claim. This court

---

[3]    The Supreme Court has stated that a Rule 60(b) motion attacking the district court's resolution of the merits is actually a successive habeas petition "if it attacks the federal court's previous resolution of a claim *on the merits*, since alleging that the court erred in denying habeas relief on the merits is effectively indistinguishable from alleging that the movant is, under the substantive provisions of the statutes, entitled to habeas relief." *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005); *see also* 28 U.S.C. § 2244(b)(1) (prohibiting the filing of a petition in district court containing claims that were "presented in a prior application"). Although Guevara's Rule 60(b) motion challenges this court's adjudication of the merits, the respondent has not moved to dismiss on the basis that it is a successive habeas petition.

found that the Texas courts were not unreasonable in finding that Guevara did not present a *prima facie Atkins* claim, that further fact finding or an evidentiary hearing were unnecessary, and that Guevara did not merit habeas relief. The Fifth Circuit affirmed this court's judgment, in part because "he presented no full-scale results from an accepted IQ test." The only full-scale score Guevara presented was 77, above the criteria for a diagnosis of intellectual disability. Guevara presented scores from "various sections of various other IQ tests," but they ranged "from 60 to 91."[4] And Guevara did not present strong evidence on the second *Atkins* prong because his expert's affidavit "conflict[ed] with much of the other evidence in the record." Guevara presented no evidence on the third *Atkins* prong. *Guevara*, 577 F. App'x at 373. Guevara's recent arguments do not strengthen the claim that this court and the appellate courts denied.

### III.   *Brumfield*

Guevara argues that the Supreme Court's *Brumfield* decision, issued only weeks after the denial of *certiorari* in his case, amounts to an extraordinary circumstance requiring the reopening of his case. In *Brumfield*, a Louisiana death-row inmate amended his state habeas petition to raise an *Atkins* claim and moved for the opportunity to prove he was intellectually disabled. When Brumfield filed his state habeas petition, Louisiana law permitted a hearing on postconviction *Atkins* claims only when the inmate "put forward sufficient evidence to raise a reasonable ground to believe him to be intellectually disabled." *Brumfield*, 135 S. Ct. at 2274 (quotation omitted). The Louisiana courts rejected Brumfield's *Atkins* claim without allowing him time or funding to get expert evidence and an evidentiary hearing.

---

[4] Guevara asserts that he based his *Atkins* claim on an "IQ score of 60." (Docket Entry No. 69 at 15). The record only contains one full-scale IQ score, which was above the cut-off for a diagnosis of intellectual disability. Guevara refers to a score on an instrument that professional organizations have not recognized as appropriate test for meeting the first *Atkins*' prong. *Maldonado v. Thaler*, 625 F. 3d 229, 240 (5th Cir. 2010).

On federal habeas review, the district court held that the Louisiana courts had deprived Brumfield of due process by not holding a hearing, and alternatively held that the state court decision was an unreasonable determination of the facts under 28 U.S.C. § 2254(d)(2). The federal district court held an evidentiary hearing and ruled that Brumfield had met the *Atkins* standard. The Fifth Circuit reversed, finding that the state court did not abrogate Brumfield's due process rights by denying him a hearing and that the petition failed to meet 28 U.S.C. § 2254(d)(2).

The Supreme Court focused on whether "the state court's rejection of Brumfield's request for an *Atkins* hearing was premised on an 'unreasonable determination of the facts' within the meaning of § 2254(d)(2). . . ." *Brumfield*, 135 S. Ct. at 2276. The Court did "not question the propriety of the legal standard the trial court applied, and presume[d] that a rule according an evidentiary hearing only to those capital defendants who raise a 'reasonable doubt' as to their intellectual disability is consistent with our decision in *Atkins*." *Brumfield*, 135 S. Ct. at 2276. Instead, the Court focused on whether the state habeas court was unreasonable in finding that "Brumfield's IQ score was inconsistent with a diagnosis of intellectual disability and that he had presented no evidence of adaptive impairment." *Brumfield*, 135 S. Ct. at 2276-77. The Supreme Court found that Louisiana's *Atkins* jurisprudence made it unreasonable to deny Brumfield a hearing, particularly because his IQ score was within the range Louisiana had defined as eligible for *Atkins* protection.[5]

---

[5] The Supreme Court analyzed three errors in the Louisiana state courts' application of its own post-*Atkins* law to the facts in Brumfield's case. First, the state courts cited an expert's testimony that Brumfield scored 75 on an IQ test and may have scored higher on another test, finding that this precluded finding that he had subaverage intelligence under the first *Atkins* prong. The Supreme Court found that when "[a]ccounting for [the accepted] margin of error," the "reported IQ test result of 75 was squarely in the range of potential intellectual disability." *Brumfield*, 135 S. Ct. at 2278. "Nor was there evidence of any higher IQ test score that could render the state court's determination reasonable." *Id*. Second, the state court had found no evidence of adaptive skills. The Supreme Court reviewed the standard Louisiana had set to assess whether an inmate had a deficit in adaptive skills that would qualify under the
(continued...)

Guevara reads *Brumfield* as holding that "a state court confronted with some evidence of [intellectual disability] unreasonably denies an *Atkins* claim on the merits if it fails to furnish the inmate with further opportunity to be heard on the evidence supporting that claim." (Docket Entry No. 69 at 13). Guevara contends that under *Brumfield*, federal courts should not apply AEDPA deference and instead should hold an evidentiary hearing whenever "the record before the state court 'contain[s] . . . sufficient evidence to raise a question as to whether' the defendant meets the 'criteria' for [intellectual disability]." (Docket Entry No. 69 at 14). Guevara compares the evidence in his case to that in *Brumfield* and argues that the law entitles him to additional fact-finding procedures in federal court.

The respondent counters that *Brumfield* did not "adopt any universal standard for reviewing the sufficiency of evidence supporting an *Atkins* claim," but rather "confined its analysis to whether Louisiana's application of its own law was based on an unreasonable determination of the facts." (Docket Entry No. 70). The respondent argues that the Supreme Court "explicitly avoided making any determinations as to the propriety of Louisiana's legal standard and presumed it to be constitutional." (Docket Entry No. 70 at 12). "*Brumfield* was not about a legal standard; it was about an inmate with adaptive deficits and an estimated IQ of 75, who met Louisiana's standard for an evidentiary hearing but was nonetheless deprived of the opportunity to support his claim with evidence." (Docket Entry No. 70 at 13).

---

⁵ (...continued)
second *Atkins* prong. Applying Louisiana's standard to the record evidence, the Supreme Court found that "[t]he record before the state court contained sufficient evidence to raise a question as to whether Brumfield met these criteria." *Id.* at 2280. Finally, the Supreme Court referred to Louisiana's guarantee that, "in seeking an evidentiary hearing, [an inmate is] not obligated to show that he was intellectually disabled, or even that he would likely be able to prove as much" but only must "raise a 'reasonable doubt' as to his intellectual disability." *Id.* at 2281. The Supreme Court found that the Louisiana habeas court's ruling was unreasonable "given that the evidence from trial provided good reason to think Brumfield suffered from an intellectual disability, there was even greater cause to believe he might prove such a claim in a full evidentiary hearing." *Id.*

Contrary to Guevara's argument, *Brumfield* was about how federal courts consider habeas claims when the state courts deny an inmate a hearing despite the fact that the inmate presented evidence that met the requirements for a hearing under that State's post-*Atkins* law. *Brumfield* analyzed Louisiana's standard that "an *Atkins* evidentiary hearing is required when an inmate has put forward sufficient evidence to raise a reasonable ground to believe him to be intellectually disabled." *Brumfield*, 135 S. Ct. at 2274 (quotation omitted). The *Brumfield* Court did not impose Louisiana's *Atkins* standard for granting an evidentiary hearing on the *Atkins* procedures developed in other states.[6] The Supreme Court did not state or require national legal standard to govern, or a threshold amount of evidence needed to pass, the screening phase of *Atkins* cases. One court summarized the Supreme Court's analysis in *Brumfield*, as follows:

> [The Court] limited its holding . . . to an application of Louisiana law to the evidence presented in that case. The Court did not purport to alter its prior teachings about intellectual disability, procedural default, or the actual innocence exception. Rather, the Court simply held that the state habeas court's refusal to grant Brumfield an evidentiary hearing on his intellectual disability claim, as permitted by Louisiana law, was based on "an unreasonable determination of the facts" within the meaning of 28 U.S.C. § 2254(d)(2).

*Prieto v. Zook*, 791 F.3d 465, 472 n.6 (4th Cir.), *cert. denied sub nom. Prieto v. David Zook*, 136 S. Ct. 28 (2015).

In sum, *Brumfield* did not announce new law or create a new legal standard. Instead, the

---

[6] The *Atkins* court recognized a constitutional protection from execution for intellectually disabled offenders but "remitt[ed] to the States responsibility for implementing the *Atkins* decision." *Bobby v. Bies*, 556 U.S. 825, 837 (2009); *see also In re Johnson*, 334 F.3d 403, 405 (5th Cir. 2003) ("[T]he Court in *Atkins* explicitly stated that it left 'to the States the task of developing appropriate ways to enforce the constitutional restriction upon its execution of sentences' . . . it would be wholly inappropriate for this court, by judicial fiat, to tell the States how to conduct an inquiry into a defendant's mental retardation." (citations omitted)). While the Supreme Court in recent years has provided some guidance on state-create approached that may not comply with *Atkins*, *see Hall v. Florida*, ___ U.S. ___, 134 S. Ct. 1986, ___ (5th Cir. 2014) (rejecting Florida's rule disqualifying an inmate from *Atkins* protection if his IQ score was more than 70), the Supreme Court has not established a nationwide standard for states to apply in adjudicating *Atkins* claims or recognized a threshold amount of evidence that triggers a state court review.

11

Supreme Court held that Louisiana had failed to apply its own standards for *Atkins* claims. *See Butler v. Stephens*, No. 09-70003, 2015 WL 5235206, at *10 (5th Cir. Sept. 9, 2015) (commenting that *Brumfield* did not reject Louisiana law, but instead disagreed with Louisiana's application of its own law). *Brumfield* does not provide a basis on which the court can reopen judgment under Rule 60(b)(6).

Even if Guevara is correct and *Brumfield* has changed federal courts' analysis of an inmate's *Atkins* claim, he does not provide a basis for this court to reopen the judgment. Even accepting Guevara's interpretation of *Brumfield*, it is a change in decisional that "does not constitute exceptional circumstances and is not alone grounds for relief from a final judgment." *Bailey v. Ryan Stevedoring Co.*, 894 F.2d 157, 160 (5th Cir. 1990) (citations omitted); *see also Hess v. Cockrell*, 281 F.3d 212, 216 (5th Cir. 2002). *Brumfield* does not provide an exceptional circumstance requiring this court to reconsider the adjudication of Guevara's habeas petition.

## IV.     Certificate of Appealability

A habeas petitioner must obtain a certificate of appealability before he can appeal the denial of a Rule 60(b) motion. *See Hernandez v. Thaler*, 630 F.3d 420, 428 (5th Cir. 2011). Guevara has not yet asked for a certificate to appeal the adjudication of his Rule 60(b)(6) motion, though this court may consider the issue on its own. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A court may only issue a certificate of appealability when "[a petitioner] has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This court, and others, have extensively considered the evidence supporting Guevara's *Atkins* claim. Guevara's post-judgment motion does not provide any argument strengthening his *Atkins* claim or demonstrating an entitlement for habeas relief. Applying

the governing standards, the court declines to issue the certificate.

**V. Conclusion**

The court **DENIES** Guevara's Rule 60(b)(6) motion and does not certify an issue for Fifth Circuit review.

SIGNED on January 26, 2016, at Houston, Texas.

_____
                Lee H. Rosenthal
           United States District Judge